EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rubén Freyre Martínez<br><br>Recurrido<br><br>v.<br><br>Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa<br><br>Peticionario | Certiorari<br><br>2026 TSPR 20<br><br>217 DPR ___ |

Número del Caso: CC-2024-0784


Fecha: 5 de marzo de 2026


Tribunal de Apelaciones

　　Panel XI


Representantes legales de la parte peticionaria:

　　Lcdo. Ramón Pérez González
　　Lcda. Amy A. Ruiz Goyco


Representante legal de la parte recurrida:

　　Lcdo. José G. Barea Fernández


Materia: Derecho Administrativo; Propiedad Horizontal – Figura de la rebeldía en el contexto administrativo; desestimación sumaria de una querella presentada en el DACo ante el incumplimiento con los requisitos dispuestos en el Art. 65 de la Ley de Condominios.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rubén Freyre Martínez<br><br>Recurrido<br><br>v.<br><br>Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa<br><br>Peticionario | CC-2024-0784 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico, a 5 de marzo de 2026.

En esta ocasión, tenemos la oportunidad de expresarnos, por primera vez, sobre la figura de la rebeldía en el contexto administrativo. En específico, nos corresponde interpretar la Sección 3.10 de la Ley Núm. 38-2017, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9650, y examinar su interrelación con los principios procesales aplicables a la rebeldía, conforme a las Reglas de Procedimiento Civil, 32 LPRA Ap. V.

Por otro lado, en el presente caso, nos corresponde determinar si procedía la desestimación sumaria de la Querella presentada por el Sr. Rubén Freyre Martínez (recurrido) ante el Departamento de Asuntos al Consumidor (DACo), por alegado incumplimiento con los requisitos del Art. 65 de la Ley Núm. 129-2020, según enmendada, Ley de

Condominios, 31 LPRA sec. 1923j, para presentar una acción de impugnación de acuerdos del Consejo de Titulares. En otras palabras, debemos evaluar si el recurrido cumplió con los requerimientos de participación en la asamblea y votación en contra del acuerdo o, en su defecto, si justificó adecuadamente su incomparecencia, según dispone la referida disposición legal, como condición previa para ejercer dicha acción impugnatoria.

Anticipamos que, evaluada la Querella instada por el señor Freyre Martínez, de esta no surge alegación alguna que justificara su incomparecencia a las asambleas. De igual manera, destacamos que tampoco el expediente del caso contiene alegación o documentación alguna que acredite que el señor Freyre Martínez compareció a las asambleas y que votó en contra de los acuerdos alcanzados en estas, ni evidenció justa causa para su incomparecencia. A su juicio, este consideraba estar exento del pago de las derramas en virtud de un dictamen judicial previo que declaró nula la reconstrucción de varias áreas comunes. Sin embargo, concluimos que esto no constituye la justa causa que requiere el Art. 65 de la Ley Núm. 129-2020, *supra*. Por lo cual, procedía la desestimación sumaria de la Querella.

Por lo tanto, en este caso, el DACo actuó correctamente al desestimar la causa de acción por incumplimiento con el Art. 65 de la Ley Núm. 129-2020, *supra*. En vista de ello, el Tribunal de Apelaciones erró al revocar dicha determinación.

I

El caso que nos ocupa guarda estrecha relación con el caso civil *Junta de Planificación del Gobierno de Puerto Rico v. Condominio Sol y Playa y otros*.[1] En ese caso, el Tribunal de Primera Instancia, Sala Superior de Aguadilla, declaró nulo un permiso de construcción otorgado para la remodelación de una piscina, jacuzzi, baños, gazebos, la reparación de aceras existentes y la construcción de nuevas aceras, en un área ocupada por las facilidades recreativas del Condominio Sol y Playa, localizado en el municipio de Rincón.[2] En consecuencia, el foro primario ordenó la paralización de las obras de construcción iniciadas en el Condominio. Además, ordenó la demolición de toda estructura construida al amparo del referido permiso, la remoción de los escombros de la propiedad y la restitución del área a su estado natural.

Por otra parte, mientras el caso se ventilaba en el Tribunal de Primera Instancia, el DACo atendía de forma simultánea varias querellas radicadas por titulares del Condominio, entre ellas, una del recurrido, contra la Junta de Directores y el Consejo de Titulares (peticionarios). En dichas querellas se impugnaba **la derrama aprobada por el Consejo en la asamblea celebrada el 5 de octubre de 2019,**

---

[1] Véase caso núm. AG2021CV00945.

[2] El Tribunal de Apelaciones confirmó al Tribunal de Primera Instancia mediante la Sentencia dictada el 22 de abril de 2022, en el caso núm. KLAN202200138. Posteriormente, este Tribunal denegó la expedición del recurso de *certiorari* presentado en el caso núm. CC-2022-0329, mediante el cual se solicitó la revisión de la determinación del foro apelativo intermedio.

**destinada a la reconstrucción de la verja, la piscina, los gazebos, los baños recreativos y el cuarto de máquinas para la piscina, los cuales habían sido destruidos por los huracanes Irma y María.[3]**

El 28 de febrero de 2023, el DACo emitió una Resolución Sumaria con relación a las querellas presentadas por el señor Freyre Martínez y los demás titulares del Condominio.[4] En esa ocasión, la agencia administrativa determinó que el proyecto de reconstrucción, para el cual se había aprobado la derrama, no contaba con los permisos de construcción requeridos. Fundamentó su determinación en la Sentencia emitida por el TPI en el caso *Junta de Planificación del Gobierno de Puerto Rico v. Condominio Sol y Playa y otros*. Por tal razón, concluyó que la obra de construcción no podía llevarse a cabo en la forma en que fue aprobada y presentada en la asamblea. **En consecuencia, el DACo declaró nula, y dejó sin efecto, la derrama aprobada el 5 de octubre de 2019 para la reconstrucción de las áreas comunes.**

En lo que respecta al caso que nos ocupa, **el 23 de octubre de 2023, el señor Freyre Martínez presentó la Querella Núm. C-SAN-2023-0017236 ante el DACo** en contra de los peticionarios.[5] Cabe mencionar que la Notificación de Querella les apercibió a los peticionarios lo siguiente:

---

[3] La Querella presentada por el señor Rubén Freyre Martínez fue registrada bajo el alfanumérico C-SAN-2020-0007227. Cabe mencionar que la derrama fue aprobada con treinta y nueve votos a favor y cinco en contra. El señor Freyre Martínez fue parte de los titulares que votaron en contra de la aprobación de dicha derrama.
[4] Apéndice A del recurso de *certiorari*, págs. 20-31.
[5] Apéndice A del recurso de *certiorari*, págs. 1-34.

> **[e]l término que usted tiene para contestar la querella o enmienda es de veinte (20) días calendarios, a partir de la notificación de la querella. De no recibirse una contestación a la querella en dicho término se le anotará la rebeldía.**

En lo pertinente a sus alegaciones, el señor Freyre Martínez indicó que había recibido cartas de cobro por parte de los peticionarios, relacionadas con cargos adicionales sobre la verja que fue construida ilegalmente. Señaló que se había opuesto a su construcción desde el principio, es decir, desde su oposición a la derrama aprobada en la asamblea del 5 de octubre de 2019, y que el DACo lo había eximido del pago de esta, por cuanto la declaró nula.[6] Alegó, además, que los peticionarios **intentaban desvincular esa derrama** inicial para la construcción de la verja, **de las derramas relacionadas a los costos de demolición, remoción de escombros, restauración del hábitat y costos legales.** Por tanto, solicitó ser eximido de toda responsabilidad financiera y legal, relacionada a las acciones y omisiones vinculadas al referido proyecto de demolición.

Habiendo transcurrido poco más de siete meses desde la presentación de la Querella, el 6 de junio de 2024, los peticionarios presentaron su Contestación a Querella y Solicitud de Desestimación.[7] En esencia, **argumentaron que las asambleas celebradas en el 2023 fueron debidamente convocadas y contaron con el *quorum* requerido. Además, indicaron que el señor Freyre Martínez no participó —ni**

---

[6] Véase Resolución Sumaria del Departamento de Asuntos del Consumidor del 28 de febrero de 2023.
[7] Apéndice C del recurso de *certiorari*, págs. 37-40.

**personalmente ni mediante *proxy* — de la asamblea celebrada el 8 de julio de 2023.[8] Igualmente, sostuvieron que el recurrido no presentó justa causa para su incomparecencia, según exige el Art. 65 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1923j.** En consecuencia, solicitaron la desestimación de la Querella presentada en su contra.

El 12 de junio de 2024, el DACo emitió una Resolución Sumaria mediante la cual desestimó la Querella Núm. C-SAN-2023-0017236 presentada por el recurrido, ordenando su cierre y archivo.[9] En la referida resolución, el DACo formuló varias determinaciones de hechos entre ellas las siguientes:

1. La parte querellante Rubén Freyre Martínez es titular del apartamento 307 en el Condominio Sol y Playa, localizado en Rincón, Puerto Rico. Adquirió dicha propiedad mediante la escritura número 9 otorgada en Mayagüez, Puerto Rico el 10 de marzo de 2000 ante el notario Luis M. Ferrer Dávila.

2. El [C]ondominio Sol y Playa se encuentra sometido al régimen de Propiedad Horizontal.

3. El día 26 de octubre de 2023, la parte querellante presentó por internet la querella de epígrafe. En la misma, alega en síntesis que en febrero de 2023 a través de una determinación del DACO fue eximido del pago de una derrama relacionada a la construcción de una verja ilegal. No obstante, posteriormente ha recibido cartas de cobro relacionadas con derramas posteriores relacionadas a la verja ilegalmente construida. Se le indicó que dichos cargos adicionales o derramas están relacionadas […] con un proyecto de demolición de la verja, por lo que se le indicó que es una derrama distinta a la que fue eximida la parte querellante originalmente.

4. El 2 de octubre de 2023 la parte querellada a través de la tesorera de la Junta de Directores remitió una carta a la parte querellante. En la misma [indicó], que éste se encuentra en atraso de las derramas aprobadas. Una de las derramas es por concepto de gastos de abogados aprobada el 1 de noviembre de 2021; otra es la derrama de Demolición #1 con fecha de 7/8/2023 cuya deuda es de

---

[8] Apéndice F del recurso de *certiorari*, pág. 172. La referida asamblea se celebró para dar cumplimiento con la sentencia emitida en el caso AG2021CV00945. Véase, además, apéndice C del recurso, págs. 37-40. En la Contestación a Querella y Solicitud de Desestimación, el Consejo de Titulares erróneamente señaló que la asamblea se había llevado a cabo el 28 de febrero de 2023.
[9] Apéndice D del recurso de *certiorari*, págs. 41-48.

$12,002.36; y otra derrama Demolición #2 con fecha de 9/17/2023 cuya deuda es de $10,673.71. Por último, se le informa que de no recibirse el pago […] [en] 30 días, se estaría aplicando lo dispuesto en el Artículo 39 de la Ley de Condominios para la suspensión de los servicios de agua y energía eléctrica.[10]

**El DACo concluyó que no existía controversia de hechos materiales que ameritara la celebración de una vista administrativa.** En particular, señaló que las derramas en controversia fueron aprobadas en asambleas celebradas en las siguientes fechas: gastos legales con fecha del 1 de noviembre de 2022; derrama de demolición núm. 1 del 8 de julio de 2023; y derrama de demolición núm. 2 del 17 de septiembre de 2023.[11] **Además, determinó que el señor Freyre Martínez incumplió con el requisito de impugnar las derramas y los acuerdos alcanzados en dichas asambleas.**

**En específico, el DACo resolvió que el recurrido no expresó en la Querella haber comparecido a las asambleas ni haber votado en contra de las derramas que se negó a pagar.** Señaló que el señor Freyre Martínez solo se limitó a solicitar la exención en el pago de dichas derramas, por entender que había sido eximido previamente del pago correspondiente para la construcción de la verja. Además, indicó que no surgía de la Querella fundamento alguno que justificara eximirlo del pago de las derramas impugnadas. De igual modo, la agencia concluyó que el señor Freyre Martínez

---

[10] Aclaramos que el DACo determinó que la Querella fue presentada el 26 de octubre de 2023. Sin embargo, surge de la Querella, que esta se presentó el 23 de octubre de 2023. Véase Apéndice A del recurso de *certiorari*, pág. 4.

[11] A pesar de que el DACo señaló que la asamblea sobre gastos legales fue celebrada el 1 de noviembre de 2022, surge de sus determinaciones de hecho, y de la carta de cobro que acompañó la Querella, que **esta fue celebrada el 1 de noviembre de 2021.**

presentó su impugnación fuera del término de treinta días establecido en el Art. 65 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1923j, por lo que estaba impedido de impugnar los acuerdos.

El 2 de julio de 2024, el recurrido presentó ante el DACo una *Moción solicitando reconsideración y para asumir representación legal*.[12] Mediante esta, sostuvo que se le privó de la oportunidad de exponer su posición respecto a la solicitud de desestimación. Además, argumentó que era falso el planteamiento sobre la falta de justa causa por la cual estuvo ausente en las asambleas, **pues había alegado que estaba exento del pago de todas las derramas aprobadas por los peticionarios con posterioridad a la asamblea celebrada el 5 de octubre de 2019.** Sostuvo, una vez más, que la Resolución Sumaria emitida por el DACo el 28 de febrero de 2023, lo eximió del pago de la derrama aprobada el 5 de octubre de 2019 para la construcción de la verja, dado que el permiso de construcción había sido declarado nulo.

De igual forma, el recurrido señaló que los peticionarios no justificaron su demora al presentar su contestación a la Querella fuera del término de veinte días que establece la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9601 *et seq.*, y la Regla 8.1 del Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 de 13 de junio de 2011. Asimismo, indicó que, conforme establece la Regla

---

[12] Apéndice E del recurso de *certiorari*, págs. 49-67.

10.1 de dicho reglamento, la agencia debió señalar una vista administrativa para garantizar el debido proceso de ley. Por otro lado, indicó que el 6 de agosto de 2023 presentó la Querella Núm. C-SAN-2023-0015678 para impugnar la derrama de la demolición, la cual aún no había sido resuelta por el DACo.[13] Finalmente, argumentó que el término aplicable a su reclamación era de dos años y no el de treinta días. Atendidos los planteamientos esbozados por el recurrido, la agencia denegó de plano su solicitud.

Inconforme con la determinación administrativa, el señor Freyre Martínez acudió ante el Tribunal de Apelaciones mediante un recurso de revisión judicial, en el que solicitó que se revocara la Resolución Sumaria emitida por el DACo el 12 de junio de 2024.[14] En su recurso, argumentó que el DACo erró al resolver la Querella de forma sumaria, sin brindarle oportunidad para mostrar causa por la cual no debía ser desestimada, pese a que indicó que existía controversia de hechos materiales que debían ser dilucidados en una vista. Además, señaló que la agencia incidió en su proceder al no anotarle la rebeldía al Consejo y aplicar un término prescriptivo de treinta días, en lugar de dos años, al

---

[13] En la Querella número C-SAN-2023-0015678 de 6 de agosto de 2023, el señor Rubén Freyre Martínez impugnó la validez de la derrama aprobada en la asamblea celebrada el 8 de julio de 2023. Como fundamento de su oposición, alegó, entre otras cosas, que la referida asamblea no contó con el *quorum* requerido para aprobar la derrama y que, mediante Resolución del DACo de 28 de febrero de 2023, se había declarado la nulidad de todas las actuaciones relacionadas con la derrama aprobada en la asamblea del 5 de octubre de 2019. Surge del expediente, que Freyre Martínez presentó una enmienda a dicha querella; sin embargo, esta no obra en el expediente del caso.

[14] Apéndice H del recurso de *certiorari*, págs. 269-286. Véase caso núm. KLRA202400454.

considerar —a su juicio— que se trataba de una acción que violentó la Ley de Condominios, 31 LPRA sec. 1921 *et seq.*

Examinados los alegatos de ambas partes, el 3 de octubre de 2024, el Tribunal de Apelaciones emitió una Sentencia mediante la cual revocó la Resolución Sumaria emitida por el DACo. **Concluyó que la agencia administrativa no debió disponer del caso por la vía sumaria, debido a que existía controversia respecto a si el recurrido fue debidamente notificado de la celebración de las asambleas en las que se aprobaron las derramas impugnadas. Asimismo, determinó que existía controversia sobre la existencia de causa justificada para la incomparecencia del recurrido a las asambleas. Además, el foro apelativo resolvió que el DACo incurrió en error al no declarar en rebeldía a los peticionarios por no haber contestado la Querella dentro del término de veinte días, dispuesto en la Regla 8.1 del Reglamento de Procedimientos Adjudicativos del DACo, *supra*.**

El 18 de octubre de 2024, los peticionarios presentaron una Moción de Reconsideración, a la cual se opuso el señor Freyre Martínez el 17 de noviembre de 2024.[15] Así pues, el 13 de noviembre de 2024, el Tribunal de Apelaciones emitió una Resolución mediante la cual reafirmó su determinación inicial.[16]

Insatisfechos, el 10 de diciembre de 2024, los peticionarios acudieron ante este Tribunal mediante una

---

[15] Apéndice I y J del recurso de *certiorari*, págs. 287-307.
[16] Apéndice K del recurso de *certiorari*, págs. 308-309.

petición de *certiorari*, en la que esbozaron los errores siguientes:

> Erró el Honorable Tribunal de Apelaciones al anotar la rebeldía automáticamente a pesar de que la querella se había contestado previo a que el Departamento de Asuntos del Consumidor emitiera la Resolución Sumaria, razón por lo cual se había tornado académico el planteamiento de la rebeldía.

> Erró el Honorable Tribunal de Apelaciones al revocar la Resolución Sumaria emitida por el DACO y ordenar la anotación de rebeldía, cuando es la agencia administrativa quien tiene la discreción sobre dicho asunto conforme el Artículo 3.10 de la Ley 38-2017, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.

> Erró el Honorable Tribunal de Apelaciones al darle la oportunidad a la parte querellante de explicar las razones por las cuales no compareció a la asamblea en una vista, permitiendo de esta forma que se enmienden las alegaciones de una querella, en contravención a la Regla 16.2 del Reglamento núm. 8034, Reglamento Adjudicativo, que impide que se enmiende una querella en la vista en los casos en rebeldía.

Expedido el auto de certiorari, y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver, no sin antes exponer el derecho aplicable al caso ante nuestra consideración.

## II

**A. Ley de Procedimiento Administrativo Uniforme.**

La Ley Núm. 38-2017, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9601 *et seq.*, regula los procedimientos administrativos conducidos por las agencias que no están exceptuadas por ley. Los procedimientos administrativos formulan los procesos de reglamentación, adjudicación, concesión de licencias e investigación que llevan a cabo las agencias. Sección 1.3 (i) de la LPAU, 3 LPRA sec. 9603. Véase J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed. rev., San Juan, Ed.

SITUM, 2023, págs. 19-20. Asimismo, la política pública de la LPAU fomenta la solución informal de las controversias administrativas. Sección 1.2 de la LPAU, 3 LPRA sec. 9602. El referido estatuto establece que "[l]as disposiciones de esta Ley se interpretarán liberalmente, de forma tal que garanticen que los procedimientos administrativos se efectúen en forma rápida, justa y económica y que aseguren una solución equitativa en los casos bajo la consideración de la agencia". Íd.

Como parte de sus facultades adjudicativas, y en lo que nos concierne, la LPAU faculta a las agencias administrativas para dictar órdenes o resoluciones sumarias, cuando no existan hechos materiales o esenciales en controversia. En específico, la Sección 3.7 de la LPAU dispone que:

> **(a) Si la agencia determina que es necesario celebrar una vista adjudicativa,** podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.
>
> **(b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.**
> **La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.** (Negrilla suplida).
> 3 LPRA sec. 9647.

Así pues, las agencias administrativas pueden emitir órdenes o resoluciones sumarias de carácter final o parcial cuando, entre otras cosas, no existan hechos materiales que estén en controversia. **En ese caso, no será necesario celebrar una vista administrativa.**

Por otro lado, la LPAU faculta a las agencias administrativas para declarar a una parte en rebeldía. Sección 3.10 de la LPAU, 3 LPRA sec. 9650. La rebeldía ha sido definida como "la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir un deber procesal". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexiNexis, 2017, pág. 327. En específico, la LPAU establece que:

> **Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.** (Negrilla suplida). Sección 3.10 de la LPAU, *supra*.

Surge de lo anterior que, una parte que ha sido debidamente citada y que no compareció a la conferencia con antelación a la vista, o a cualquier etapa de procedimiento adjudicativo, podrá ser declarada en rebeldía por el funcionario que preside los procedimientos administrativos. Además, dicho funcionario podrá continuar los procedimientos sin la participación de la parte declarada en rebeldía. No obstante, deberá notificar por escrito a dicha parte de su

determinación, los fundamentos de esta y el recurso de revisión disponible.

Este Tribunal no ha tenido la oportunidad de pronunciarse sobre el texto de la Sección 3.10 de la LPAU, *supra*. Ahora bien, en el pasado hemos señalado que, aunque como norma general las Reglas de Procedimiento Civil, 32 LPRA Ap. V, no aplican automáticamente a los procesos administrativos, estas resultan aplicables a los procedimientos ante las agencias cuando propicien una solución justa, rápida y económica. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 840-841 (2021); *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 623 (2018); *Pérez v. VPH Motors Corp.*, 152 DPR 475, 484-485 (2000).

Esta norma responde "a la necesidad de que los organismos administrativos funcionen sin la inflexibilidad que generalmente caracteriza a los tribunales". *SLG Saldaña-Saldaña v. Junta*, *supra*, pág. 623; *Pérez v. VPH Motors Corp.*, *supra*, pág. 484. **Lo anterior también comprende las interpretaciones que hagamos de las Reglas de Procedimiento Civil, siempre que sean compatibles con los principios que rigen el procedimiento administrativo.** M. Izquierdo Encarnación, *Introducción al Derecho Administrativo*, 5ta ed., San Juan, Ed. SITUM, 2020, pág. 191.

**Tratadistas de la materia han señalado que los principios procesales de la rebeldía establecidos en las Reglas de Procedimiento Civil aplican a los procesos adjudicativos de los foros administrativos.** Echevarría

Vargas, *op. cit.*, pág. 222; Izquierdo Encarnación, *op. cit.*, pág. 191; D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 823.

Por su parte, el tratadista Demetrio Fernández Quiñones comenta sobre las instancias en que puede anotarse la rebeldía en el contexto administrativo y señala que: "**son en esencia las mismas que se reconocen por las Reglas de Procedimiento Civil. El conjunto de las decisiones que interpretan y aplican las disposiciones contenidas en las Reglas de Procedimiento Civil debe ser las que regulen y revisen la actuación administrativa**". (Negrilla suplida). Fernández Quiñones*, op. cit.*, pág. 823.

**En vista de que la figura de la rebeldía ha sido incorporada expresamente a los procesos administrativos mediante la Sección 3.10 de la LPAU, *supra*, y considerando que este Tribunal aún no se ha expresado sobre dicha disposición, resulta pertinente repasar las interpretaciones que hemos realizado sobre la rebeldía bajo las Reglas de Procedimiento Civil, *supra*. Pues hoy pautamos que dichos pronunciamientos son compatibles con el procedimiento administrativo.**

**B. La rebeldía.**

La Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, regula la anotación de rebeldía en los procesos judiciales. En específico, la Regla 45.1 de Procedimiento Civil establece que:

> Cuando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o la Secretaria anotará su rebeldía.
>
> El tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).
>
> Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
>
> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía. 32 LPRA Ap. V.

Según surge, esta regla atiende las situaciones en las que el demandado no comparece a contestar la demanda o no se defiende de ninguna otra forma. El propósito de la anotación de rebeldía es disuadir a la parte que incurre en la dilación de los procesos como estrategia de litigio. *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1068-1069 (2019); *Ocasio v. Kelly Servs.*, 163 DPR 653, 670-671 (2005). Véase, además, J. A. Cueva Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, T. IV, pág. 1339. Es decir, "el mismo opera como remedio coercitivo contra una parte adversaria a la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse". *Ocasio v. Kelly Servs.*, *supra*, pág. 671. Véase *Álamo v. Supermercado Grande*, *Inc.*, 158 DPR 93, 101 (2002). **La consecuencia jurídica de la anotación de rebeldía es que se admitan como ciertos todos los hechos correctamente alegados**. *Ocasio v. Kelly Servs.*, *supra,* pág. 671.

**En esa línea, la rebeldía constituye un mecanismo procesal discrecional para el foro de instancia.** *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 590 (2011). **No obstante, "tal discreción no se sostiene ante el ejercicio burdo o injusto".** (Negrilla suplida). Íd. **"De manera que la anotación de rebeldía o dictar sentencia en rebeldía a una parte como sanción por su incumplimiento con una orden del tribunal siempre se debe dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción".** (Negrilla suplida). Íd.

En *J.R.T. v. Missy Mfg. Corp.*, 99 DPR 805 (1971), este Tribunal examinó una controversia sobre la figura de la rebeldía en el contexto administrativo, antes de la entrada en vigor de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, 3 LPRA ant. sec. 2101 *et seq*. En esa ocasión, nos enfrentamos a la controversia sobre si la Junta de Relaciones del Trabajo debía poner en vigor una orden dictada en rebeldía contra la parte querellada. Así, para resolver la controversia, aplicamos por analogía la Regla 45 de Procedimiento Civil de 1958 (Derogada) y su jurisprudencia interpretativa. De este modo, razonamos que:

> Cuando, como en este caso, se aduce una buena defensa y la reapertura no ocasiona perjuicio alguno, constituye un claro abuso de discreción el denegarla. Como regla general, una buena defensa debe siempre inclinar la balanza a favor de una vista en los méritos, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte del querellado. Con más razón, cuando el trámite del caso demuestra que la reapertura no ocasiona perjuicio alguno. *Sociedad de Gananciales v. Tribunal Superior*, 85 D.P.R. 892 (1962); *Latoni v. Tribunal de Expropiaciones*, 71 D.P.R. 413 (1950); *cf. Southern Construction Co. v. Tribunal Superior*, 87 D.P.R. 913 (1963).

> Son normas justas y razonables que se han formulado en bien de la justicia para atenuar los rigores del trámite judicial al derecho fundamental de su día en corte. Por su justicia inmanente deben ser y son de aplicación insoslayable tanto a los procedimientos ante el tribunal como a los procedimientos de adjudicación administrativa. *Cf. Martínez v. Tribunal Superior*, 83 D.P.R. 717 (1961). *J.R.T. v. Missy Mfg. Corp.*, *supra*, págs. 811-812.

**Por otro lado, resaltamos que la rebeldía no garantiza una adjudicación favorable para la persona que reclama.** Echevarría Vargas, *op. cit.*, pág. 222. **Ello se debe a que los tribunales no somos meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía.** *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 826 (2023). Véase, además, *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 817 (1978). **Por ende, la parte que solicita un remedio deberá alegar los hechos correctamente.** *Álamo v. Supermercado Grande, Inc., supra*, pág. 102; *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 931 (1996). **Los remedios en rebeldía "no priva[n] al tribunal de evaluar si en virtud de tales hechos, no controvertidos, existe válidamente una causa de acción que amerita la concesión del remedio reclamado".** (Negrilla suplida). *Rivera v. Insular Wire Products Corp., supra,* pág. 931.

**C. El Departamento de Asuntos del Consumidor (DACo) y su función adjudicativa.**

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341 *et seq.*, (Ley Núm. 5), creó el DACo con el propósito primordial de vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias, y

establecer y fiscalizar los precios sobre los artículos y servicios de uso y consumo.

El referido precepto legal faculta al DACo para "[e]stablecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento". Art. 6 (g) de la Ley Núm. 5, 3 LPRA sec. 341e. Cónsono con ello, el DACo creó el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 13 de junio de 2011. En lo pertinente, este dispone en la Regla 8.1 que:

> El Departamento notificará a todos los querellados la querella radicada en su contra. **Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo además que de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía.** La notificación consistirá en copia de la querella y un aviso escrito de:
>
> a) Cualquier vista que señale el Departamento las partes podrán comparecer con abogado, intérpretes, transcriptor de r[é]cord y deberán comparecer todas las personas citadas bajo el apercibimiento de la imposición de sanciones en caso de incomparecencias injustificadas.
>
> b) Una invitación para relacionarse con el expediente.
>
> c) Cuando de la relación de hechos contenida en la querella se desprenda una violación a los reglamentos y leyes que administra el Departamento, se podrá referir a la División de Protección para su investigación y la acción correspondiente. (Negrilla suplida). Reglamento de Procedimientos Adjudicativos, pág. 9.

A su vez, la Regla 11.1 del referido reglamento también establece que:

> El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho **sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos.** En tal caso, **si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.** (Negrilla

suplida). Reglamento de Procedimientos Adjudicativos, pág. 12.

**D. Revisión Administrativa.**

En cuanto al alcance de la revisión judicial de las decisiones de las agencias administrativas, la Sección 4.5 de la LPAU dispone que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
> **Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal**. (Negrilla suplida). 3 LPRA sec. 9675.

Así pues, será nuestro deber revisar las conclusiones de derecho en todos sus aspectos, guiados por los mecanismos interpretativos propios del Poder Judicial. Sección 4.5 de la LPAU, *supra*.

**E. Principios generales de la Ley de Condominios de Puerto Rico.**

Una de las fuentes rectoras del régimen de propiedad horizontal es la Ley Núm. 129-2020, según enmendada, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921 *et seq*. El citado estatuto tiene como propósito "permitir el disfrute de un apartamiento de vivienda o unidad comercial como una unidad o propiedad individualizada, aunque el mismo sea parte, junto con otros apartamentos o unidades, de un mismo edificio o inmueble". M. J. Godreau y M. I. Hernández Gutiérrez, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3ra ed., San Juan, Ediciones SITUM, 2023, pág. 130.

La Ley de Condominios le otorga al Consejo de Titulares —integrado por todos los titulares del condominio— la autoridad suprema "sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal". Exposición de Motivos de la Ley de Condominios, *supra*. Véase *Pérez Riera v. Con. Tit. Cond. Marymar*, 197 DPR 197, 204 (2017). Por lo tanto, es a través del Consejo que se hace viable la administración y el funcionamiento del inmueble. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 326 (2012). **Sus acuerdos son vinculantes y serán de ineludible cumplimiento por cada uno de los titulares**. Art. 48 de la Ley de Condominios, 31 LPRA sec. 1922t; *Consejo de Titulares v. Ramos Vázquez*, supra, pág. 326. Dicha visión responde a que **el Consejo es "el órgano supremo de la propiedad horizontal, a través del cual se manifiesta la voluntad de los propietarios singulares y en el que radican las fa[c]ultades rectoras de este régimen jurídico, para el mejor logro de los intereses comunes"**. (Negrilla suplida). *Álvarez Figueredo v. González Lamela*, 134 DPR 374, 382 (1993) citando a M. Fernández Martín Granizo, *La Ley de Propiedad Horizontal en el Derecho español*, Madrid, Ed. Edersa, 1983, pág. 908. Véase, además, *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, 133 DPR 488 (1993).

De conformidad con el Art. 49 de la Ley de Condominios, le corresponde al Consejo elegir a la Junta de Directores y al Agente Administrador, así como aprobar el presupuesto y los estados financieros anuales. 31 LPRA sec. 1922u.

Igualmente, **le corresponde aprobar la ejecución de obras extraordinarias y mejoras, y recabar los fondos para su realización. Asimismo, es al Consejo de Titulares a quien le corresponde tomar aquellas decisiones sobre asuntos de interés general para la comunidad.**

Cabe destacar que la Ley de Condominios, *supra*, está enmarcada por un principio de gobernanza que permite la participación de los condóminos en los asuntos que afecten a la comunidad. Godreau y Hernández Gutiérrez, *op. cit.*, pág. 237. Cada uno de los titulares tendrá derecho al voto durante las deliberaciones del Consejo, independientemente del número de apartamentos que sean propietarios. Art. 51 de la Ley de Condominios, 31 LPRA sec. 1922w. La asistencia a las asambleas puede ser personal o por representación legal o voluntaria. Íd.

En lo aquí pertinente, el Art. 65 de la Ley de Condominios establece que las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, **o los acuerdos del Consejo de Titulares** podrán ser impugnados por los titulares en los siguientes supuestos:

[…]

**a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;**

**b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;**

c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. […]. (Negrilla suplida). 31 LPRA sec. 1923j.

Cónsono con esto, el Art. 65 también dispone los plazos para la impugnación de los acuerdos del Consejo de Titulares

en las asambleas. A manera ilustrativa, sobre ese particular, la Ley de Condominios establece que:

> […]
>
> **Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.**
>
> **En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley.**
>
> El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. **En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada.** […]. (Negrilla suplida). Art. 65 de la Ley de Condominios, *supra*.

Del precitado articulado surge que el término para impugnar las determinaciones donde se aleguen violaciones a las disposiciones de la Ley de Condominios, a la escritura matriz o al reglamento del condominio, prescribirá a los dos años. Todas las demás impugnaciones en las que la parte alegue que resultó gravemente perjudicado tendrán un término de treinta días. Godreau y Hernández Gutiérrez, *op. cit.*, pág. 301.

En *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 508 (2011),[17] destacamos que el establecer un término para presentar las impugnaciones a los acuerdos alcanzados por el Consejo de titulares, persiguieron "precisamente frenar el afán obstruccionista de algunos titulares que, por intereses particulares, ponen en juego la estabilidad de toda una comunidad". Íd., pág. 502.

Por otro lado, el Art. 65 de la Ley de Condominios, *supra*, **claramente dispone que el titular que impugne los acuerdos del Consejo de Titulares tendrá que acreditar, como requisito estatutario, que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente, a pesar de que fue debidamente notificado, deberá probar que su ausencia estuvo justificada.** Sobre este particular, la profesora Margarita García Cárdenas también señala que, cuando se acude al DACo, **es requerido incluir en las alegaciones si el titular estuvo presente o debidamente representado en la asamblea en la que se adoptó el acuerdo impugnado, así como que votó en contra del mismo.** M. García Cárdenas, Propiedad *Horizontal: Ley de Condominios 2020*, San Juan, MJ Editores, 2023, págs. 195-196.

Conforme al Art. 66 de la Ley de Condominios, 31 LPRA sec. 1923k, el DACo promulgó el Reglamento de Condominios,

---

[17] En dicho caso interpretamos el Art. 42 de la Ley Núm. 104 de 25 de junio de 1958, según enmendada, Ley de Condominios, ahora Art. 65 de la Ley 129-2020, según emendada, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921.

Reglamento Núm. 9386 de 6 de junio de 2022. Dicho reglamento dispone sobre la información que el titular, o grupo de titulares debe incluir en la querella, entre estas, copia de la correspondencia cursada entre las partes sobre la controversia reclamada, si alguna. Regla 25, inciso (9), del Reglamento de Condominios, *supra*.

Además, la Regla 27 del citado Reglamento de Condominios, *supra*, claramente establece que:

> **[e]l incumplimiento por parte del titular o grupo de titulares de cualquiera de los requisitos establecidos en la Ley o este Reglamento, facultarán al Secretario a disponer sumariamente el archivo de la querella presentada.** (Negrilla suplida).

## III

En el caso ante nuestra consideración, el Consejo de Titulares sostiene que erró el Tribunal de Apelaciones al anotarle la rebeldía, toda vez que habían presentado su contestación a la Querella antes de que el DACo emitiera la Resolución Sumaria. Argumentan, además, que dicha determinación era un asunto discrecional de la agencia administrativa. De igual modo, sostienen que, aun cuando se considerara válida la anotación de la rebeldía, procedía la desestimación sumaria de la Querella, por no existir controversia de hechos materiales. Por otro lado, plantean que el señor Freyre Martínez presentó la Querella fuera del término de treinta días dispuesto en el Art. 65 de la Ley de Condominios, *supra*.

Por su parte, el recurrido arguye que las derramas objeto de controversia son ilegales, debido a que son

derivadas de la derrama aprobada el 5 de octubre de 2019, la cual ya había sido declarada nula por el DACo. Asimismo, argumenta que el término aplicable en este caso es de dos años, por violentar la Ley de Condominios, *supra*. Además, alegó que procedía la anotación de rebeldía, por el incumplimiento de los peticionarios con las disposiciones del Reglamento de Procedimientos Adjudicativos del DACo.

De entrada, es menester señalar que las determinaciones de hechos del DACo solo se sostendrán por este Tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Por otro lado, **las conclusiones de derecho serán revisables en todos sus aspectos**, guiadas por nuestros mecanismos interpretativos. Sección 4.5 de la LPAU, *supra*.

Como bien señalamos, la Sección 3.10 de la LPAU, *supra*, concede discreción al funcionario que presida la vista administrativa para anotarle la rebeldía a una parte que, habiendo sido debidamente citada, no compareció a la conferencia con antelación a la vista, o cualquier etapa de procedimiento adjudicativo. **Como consecuencia de dicha anotación de rebeldía, se admitirán como ciertos todos los hechos correctamente alegados.** *Ocasio v. Kelly Servs.*, *supra*. Asimismo, al igual que el proceso judicial, la anotación de la rebeldía constituye un mecanismo procesal discrecional de la agencia administrativa. *Rivera Figueroa v. Joe's European Shop*, *supra*. No obstante, dicha discreción no se sostiene ante el ejercicio burdo o injusto. Íd.

Sobre este aspecto, la Regla 8.1 del Reglamento de Procedimientos Adjudicativos del DACo, *supra*, establece claramente que la notificación de la querella deberá advertirle a la parte querellada que, de no contestar la querella dentro del término de veinte días a partir de la notificación, **se le anotará la rebeldía**. Por su parte, como vimos, la Sección 3.10 de la LPAU, *supra*, concede discreción al funcionario que preside para declarar a una parte en rebeldía.[18]

En este sentido, en el caso que nos ocupa procedía que el DACo, en un sano ejercicio de su discreción, anotara la rebeldía, por ser esta una agencia cobijada por la LPAU, pues el cuadro fáctico del caso ante nuestra consideración, así como el derecho aplicable, nos permite concluir de esta manera. Por ende, actuó correctamente el Tribunal de Apelaciones, al aplicar al presente caso los principios procesales de la rebeldía. Como indicáramos, la Querella fue presentada por el recurrido el 23 de octubre de 2023. Por su parte, los peticionarios, sin justa causa, y sin previa autorización del DACo, contestaron la Querella el 6 de junio de 2024, **es decir, transcurrido más de siete meses desde la presentación de la Querella y sin que se solicitara una prórroga de forma oportuna**. Este razonamiento adquiere mayor fuerza cuando en este caso no existe controversia respecto a que la Notificación de Querella advirtió debidamente a los

---

[18] El DACo es una agencia cobijada por la LPAU, por lo que sus reglamentos no pueden ser contrarios a dicha disposición legal. Véase *OAM v. Abarca Health*, 2025 TSPR 23, 215 DPR __ (2025).

peticionarios que contaban con un término de veinte días para presentar su contestación.

No obstante, lo anterior, si bien el DACo pudo haber incurrido en un abuso de discreción al no anotarle la rebeldía a los peticionarios, su omisión no tuvo una consecuencia en cuanto al resultado final. Como es conocido, en el ordenamiento procesal civil la anotación de rebeldía tiene el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas.[19] En el presente caso, y conforme a las alegaciones de la Querella, resultaba indispensable examinar los requisitos dispuestos en el Art. 65 de la Ley de Condominios, *supra*, ya que se tratan de requerimientos estatutarios esenciales para disponer de la causa de acción presentada ante la agencia y que, como veremos, disponen de la controversia.

Cónsono con lo anterior, estimamos pertinente puntualizar que a los foros administrativos le corresponde determinar si las partes comparecieron oportunamente y manejar diligentemente sus términos procesales, de modo que las controversias se atiendan con la prontitud y celeridad que caracteriza el trámite administrativo.

Según expusimos, el Art. 65 de la Ley de Condominios, *supra*, reconoce el derecho de los titulares a impugnar las acciones u omisiones de la Junta de Directores o los acuerdos del Consejo de Titulares, cuando estos sean contrarios a la

---

[19] Véase Regla 45 de Procedimiento Civil, 32 LPRA Ap. V. Además, esta regla dispone que "[l]a omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía".

ley, la escritura matriz o el reglamento del condominio o cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. No obstante, cuando se trate de impugnaciones de acuerdos del Consejo de Titulares, el titular "tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada". Íd. Debido a que en el presente caso el recurrido no cumplió con este requisito de umbral procedía la desestimación sumaria de la querella. En otras palabras, al considerar las alegaciones de la querella presentada por el recurrido forzoso era conceder su desestimación sumaria.

En consecuencia, debemos determinar si el Tribunal de Apelaciones erró al concluir que existía controversia respecto a la incomparecencia del recurrido a las asambleas, lo cual hacía procedente la celebración de una vista evidenciaria, a los fines de determinar si mediaba justa causa. En ese aspecto, adelantamos que el análisis realizado por el Tribunal de Apelaciones resulta contradictorio y contrario a derecho. Veamos.

Como indicamos, el Art. 65 de la Ley de Condominios, *supra,* impone a la parte querellante el deber de acreditar que estuvo presente o debidamente representada en la asamblea en la que se adoptó el acuerdo que impugna, y que votó en

contra de este. Asimismo, dicha disposición legal establece que, si el titular estuvo ausente a pesar de haber sido debidamente notificado, deberá probar que su incomparecencia estuvo justificada.

Del expediente surge que el DACo desestimó y archivó la Querella presentada por el señor Freyre Martínez, debido a que no expresó haber comparecido a las asambleas y haber votado en contra de las derramas aprobadas. No obstante, el Tribunal de Apelaciones revocó al DACo, por entender que incidió al no anotar la rebeldía a los peticionarios, sin embargo tomó en consideración las alegaciones del "rebelde" (los peticionarios) para concluir que existía controversia en cuanto a la debida notificación sobre la celebración de las asambleas en las que se aprobaron las derramas impugnadas en la Querella, y sobre la inexistencia de causa justificada para no comparecer a estas.[20] **En cuanto a este aspecto, ni la Querella ni el expediente del caso contienen alegación o documentación alguna que acredite que el señor Freyre Martínez compareció a las asambleas y que votó en contra de los acuerdos alcanzados en estas, ni hizo alegación alguna respecto a su falta de notificación.[21]**

---

[20] Cabe señalar que, en su Sentencia, el Tribunal de Apelaciones hizo referencia a la notificación de una asamblea celebrada el 28 de febrero de 2023. No obstante, aun cuando dicha fecha surge de la Contestación a Querella y Solicitud de Desestimación presentada por los peticionarios, lo cierto es que esa asamblea no formó parte de las impugnadas por el recurrido en el caso ante nuestra consideración.

[21] En la Querella Núm. C-SAN2023-0017236 el recurrido alegó que "[d]esde el comienzo del proyecto de construccion, nos opusimos a la construccion de la verja ilegal. Entendemos que no somos responsables de pagar por ningún evento relacionado a la construcción, ni remoción de la verja ilegalmente construida. Tampoco somos responsables de pagar por los gastos legales que hayan incurrido o que en el futuro incurran, ante la

De hecho, en ningún momento el recurrido controvirtió el hecho de no haber comparecido a las asambleas que impugna en el presente caso. Tampoco surge que este haya alegado justificación alguna para su incomparecencia. **Nótese que el recurrido solo se limitó a argumentar que estaba exento de pagar las derramas que habían sido aprobadas en esas asambleas por cuanto en la asamblea que se llevó a cabo el 5 de octubre de 2019 se opuso a la reconstrucción.** De igual modo, en su Moción de reconsideración presentada ante el DACo, **reiteró que las derramas aprobadas eran ilegales, ya que el permiso de construcción había sido declarado nulo y él fue eximido de pagar dicha derrama de construcción, aprobada en la asamblea del 5 de octubre de 2019.**

Asimismo, en su Recurso de Revisión ante el Tribunal de Apelaciones, el señor Freyre Martínez, frente al señalamiento sobre su incomparecencia a las asambleas, se limitó a expresar lo siguiente: "[e]ste es solo otro acto más de parte de la Querellada-Recurrida para continuar infringiendo sobre los derechos del Querellante-Recurrente, quien continuamente y en repetidas ocasiones ha levantado sus preocupaciones y oposición a las medidas unilaterales de la Junta de Directores".[22] Incluso, en su Oposición a Moción de Reconsideración presentada ante el foro intermedio, únicamente expresó que era incorrecto afirmar que la Querella

_____

insistencia de haber construido la controvertida verja. Entendemos que la "Junta del Condominio Sol y Playa", al rehusar considerar nuestra oposición al proyecto, desaprovechó la oportunidad de rectificar y evaluar con responsabilidad dicha construcción". Apéndice A del recurso de *certiorari*, págs. 3-5.

[22] Apéndice F del recurso de *certiorari*, pág. 86.

no adujera justificación alguna para su incomparecencia, **pues alegó que se opuso desde un principio a la construcción de la verja.**

Como es patente, no hallamos alegación o argumento alguno en dichas instancias que nos muevan a determinar que el DACo en este extremo abusó de su discreción al no celebrar una vista evidenciaria. En este caso, **no hay base para asumir que el señor Freyre Martínez contara con justificación para no presentarse a las asambleas y oponerse a las derramas allí aprobadas cuando estos eran requisitos indispensables para la concesión de un remedio tal cual dispone el Art. 65 de la Ley de Condominios,** *supra*. Es evidente que la única justificación del recurrido fue a los efectos de que se había opuesto a la derrama aprobada el 5 de octubre de 2019 para la construcción de la verja y que ello, a su entender, lo había eximido de su pago. Por ende, el recurrido pretende vincular la derrama declarada nula para la construcción de la verja, de las derramas aprobadas para la demolición de lo construido y para los gastos de abogado, cuando estas fueron aprobadas en asambleas distintas, para propósitos distintos. Además, contrario a lo resuelto por el Tribunal de Apelaciones, en ninguna etapa de los procedimientos, seguidos en este caso, se argumentó que existiera controversia sobre la adecuada notificación de las asambleas.

Así, tratándose de un requisito estatuido por ley, y no habiendo controversia sobre su incumplimiento, reiteramos

que actuó correctamente el DACo al desestimar de forma sumaria la Querella. Para ello, el DACo estaba facultado por la Sección 3.7 de la LPAU, *supra*, y la Regla 27 del Reglamento de Condominios, *supra*. La primera le permite disponer del caso sumariamente cuando no existan hechos materiales en controversia, y la segunda, cuando se incumple con los requisitos indispensables establecidos en la Ley de Condominios, *supra,* respecto a la impugnación de los acuerdos del Consejo de Titulares. Destacamos que ni la Ley Núm. 5 del DACo, ni su Reglamento Adjudicativo, ni el de Condominios, obligaban al DACo a celebrar una vista evidenciaria en el caso de epígrafe. Por el contrario, ante el incumplimiento con la ley el DACo, en su discreción, podía preterir la celebración de dicha vista y disponer de la controversia de forma sumaria.

Por último, en el presente caso las partes se enfrascaron en una discusión en torno a cuál término prescriptivo debía aplicar en este caso. Sobre este particular, queremos puntualizar que, en sus determinaciones de hechos, el DACo hace referencia a la carta de cobro dirigida al señor Freyre Martínez en la cual se consignó que las derramas fueron aprobadas en distintas asambleas. Sin embargo, aunque de la carta no surge la fecha en que los acuerdos fueron notificados a los titulares, ni surgen del expediente, **la realidad fáctica es que el recurrido tampoco alegó no ser notificado de los acuerdos alcanzados en las respectivas asambleas, ni anejó copia de alguna**

**correspondencia cursada a la Junta de Directores del Condominio impugnando las derramas.**

No obstante, conforme al análisis antes realizado forzoso es concluir que esta discusión no era necesaria, pues como expresamos procedía la desestimación sumaria de la Querella ante el craso incumplimiento del recurrido con los requisitos indispensables para impugnar ante el DACo los acuerdos del Consejo de Titulares, como en este caso son las derramas impugnadas.

De otra parte, y como adelantamos, el análisis realizado por el Tribunal de Apelaciones sobre el aspecto de la rebeldía resulta contradictorio y errado. Por un lado, anotó la rebeldía al Consejo de Titulares, y por el otro utilizó las alegaciones del "rebelde" para concluir que era necesario la celebración de una vista evidenciaría para dilucidar sus defensas afirmativas.[23] Una vez resuelto que procedía la anotación de rebeldía a los peticionarios, entonces correspondía dar por admitidos y como ciertos todos los hechos correctamente alegados en la Querella. Por lo tanto, erró el Tribunal de Apelaciones al revocar al DACo para que celebrara una vista evidenciaria para dilucidar las defensas afirmativas traídas por el peticionario en su tardía contestación a la Querella. Anotada la rebeldía, según

---

[23] En la *Contestación a la querella y solicitud de desestimación,* el Consejo de Titulares alegó como defensa afirmativa que las asambleas celebradas en el año 2023 fueron debidamente convocadas y contaron con el quorum necesario, y que el recurrido no participó de la asamblea celebrada el 28 de febrero de 2023, a pesar de haber sido notificado el 21 de julio de 2023 por correo certificado. Apéndice C del recurso de *certiorari*, pág. 33.

dispuesto por el Tribunal de Apelaciones, en contra del Consejo de Titulares, esta no podía presentar prueba para impugnar los méritos de la Querella y levantar defensas afirmativas.[24]

De igual manera el DACo erró al concluir que la impugnación estaba prescrita a pesar de que la Querella, de su faz, no cumplía con el requisito de umbral antes señalado. Este único asunto era suficiente para adjudicar sumariamente la Querella.

En fin, las alegaciones sobre comparecencia y oposición al acuerdo, o en su defecto, la acreditación de justa causa para la ausencia son indispensables para establecer que se tiene una causa al amparo de la ley. Recuérdese que esa vía de impugnación brinda la oportunidad de alterar el marco jurídico que rige a todos los integrantes del Condominio. Es decir, son los titulares presentes en las asambleas, los que tendrán autoridad para determinar, discutir o dar por discutidos los asuntos contenidos en la agenda. Art. 52 de la Ley de Condominios, *supra*. De este modo, sus acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares. Art. 48 de la Ley de Condominios, *supra*. Todo ello está atado a las facultades rectoras del

---

[24] *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 827 (2023). Véase, además, *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 104-105 (2002), donde reiteramos que un demandado al que se le anota la rebeldía renuncia tácitamente a la oportunidad de atacar la insuficiencia de una alegación en torno a la omisión de la fecha de los hechos y a levantar la defensa afirmativa de prescripción. *Rodríguez v. Tribunal Superior*, 102 DPR 290 (1974).

Consejo de Titulares para la sana convivencia que debe permear en los condominios.

En vista de lo anterior, es forzoso concluir que erró el Tribunal de Apelaciones al determinar que existía controversia de hechos materiales que impedía disponer de este caso de forma sumaria, sin la celebración de una vista evidenciaria. Como bien señalamos, en el caso ante nos no existe controversia respecto a que el señor Freyre Martínez incumplió con el requisito estatuario de justificar su incomparecencia a las asambleas impugnadas, por lo que actuó correctamente el DACo al desestimar la Querella sumariamente.

## IV

Por los fundamentos antes expuestos, revocamos el dictamen recurrido, toda vez que no existe controversia de hechos materiales que impidan disponer de este caso sumariamente. En consecuencia, reinstalamos la Resolución Sumaria del DACo en cuanto al incumplimiento de la parte recurrida con lo dispuesto en el Art. 65 de la Ley de Condominios, *supra*, respecto al requisito de acreditar que estuvo presente o representado en las asambleas que se tomaron los acuerdos impugnados, y que votó en contra de estos; así como por la falta de justificación de su ausencia a las asambleas.

Se dictará Sentencia en conformidad.

Camille Rivera Pérez
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rubén Freyre Martínez<br><br>Recurrido<br><br>v.<br><br>Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa<br><br>Peticionario | CC-2024-0784 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 5 de marzo de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos el dictamen recurrido, toda vez que no existe controversia de hechos materiales que impidan disponer de este caso sumariamente. En consecuencia, reinstalamos la Resolución Sumaria del DACo en cuanto al incumplimiento de la parte recurrida con lo dispuesto en el Art. 65 de la Ley de Condominios, *supra*, respecto al requisito de acreditar que estuvo presente o representado en las asambleas que se tomaron los acuerdos impugnados, y que votó en contra de estos; así como por la falta de justificación de su ausencia a las asambleas.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Candelario López emitió una Opinión concurrente y disidente, a la cual se unió la Jueza Asociada señora Pabón Charneco.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rubén Freyre Martínez<br><br>Recurrido<br><br>v.<br><br>Consejo de Titulares y/o<br>Junta de Directores del<br>Condominio Sol y Playa<br><br>Peticionario | CC-2024-0784 | |

Opinión concurrente y disidente emitida por el Juez Asociado SEÑOR CANDELARIO LÓPEZ, a la cual se une la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 5 de marzo de 2026.

A pesar de la importancia que le reconozco a la norma procesal que se intenta pautar en la ponencia mayoritaria en cuanto a la figura de la rebeldía en el ámbito administrativo, me veo obligado a distanciarme de los fundamentos por los cuales se decreta además la desestimación de la querella instada por el recurrido.

A mi juicio, bajo los fundamentos que emplea la mayoría para alcanzar este resultado, la consecuencia lógica de la anotación de rebeldía que hoy se confirma debió ser la devolución del caso al Departamento de Asuntos del Consumidor (DACo) para la continuación de los procesos de impugnación de derramas. Así lo entiendo, pues anotada la rebeldía del peticionario, no veo posible validar una resolución sumaria que el DACo solo podía emitir a petición de la parte ahora en rebeldía. Sin embargo, en lugar de permitir que la acción siguiera su curso ordinario, la mayoría emprendió la tarea de desestimar la querella bajo

la teoría de que el recurrido incumplió "el requisito estatutario" de **alegar en su querella** la justa causa que tuvo para ausentarse de las asambleas en las que se adoptaron estas derramas. En otras palabras, la mayoría entiende que para impugnar un acuerdo alcanzado en una asamblea de titulares es requisito legal no solo probar, sino **alegar** que se votó en contra del acuerdo o, en la alternativa, que existió justa causa para ausentarse de la asamblea en que se adoptó el mismo.

Con el mayor de los respetos al criterio de mis compañeros y compañeras, aunque resulte vital bajo el razonamiento empleado para desestimar la querella, la Ley de Condominios no impone tal requisito. La interpretación que hace la mayoría imprime excesiva rigidez a un procedimiento concebido para ser flexible y, más preocupante aun, impone a reclamantes legos el deber de cumplir con "requisitos de umbral" que no pueden deducirse razonablemente de la Ley.

Tras un análisis reflexivo y desapasionado de los autos, no puedo avalar el razonamiento de la mayoría, especialmente al considerar sus consecuencias sobre aquellas querellas pendientes de adjudicación que no contengan este requisito de nuevo cuño. Aun así, entiendo correcto el resultado, pues surge de la propia ponencia que existe otra querella presentada por el recurrido ante el mismo foro, para impugnar las mismas derramas, bajo los mismos fundamentos, que debió llevarnos a desestimar esta

querella para evitar litigios duplicativos y determinaciones potencialmente conflictivas.

Por las razones que expongo a continuación, **CONCURRO** con el resultado alcanzado mediante la Opinión mayoritaria, aunque no con sus fundamentos.

I

De entrada, estoy de acuerdo con la mayoría en el sentido de que el DACo debió anotar la rebeldía del Consejo de Titulares del Condominio Sol y Playa y de su Junta de Directores por no presentar su contestación a la querella dentro del término dispuesto para ello. Durante más de siete meses el Consejo se abstuvo de presentar su alegación, y cuando finalmente lo hizo, no ofreció ni un atisbo de justa causa para la dilación. Partiendo de la premisa de que no existe justificación para esta inusitada demora --pues tampoco la explica satisfactoriamente en esta etapa--,[1] no cabe duda de que su dejadez afectó el trámite de la querella, en claro perjuicio de los intereses del querellante y de una adjudicación justa, rápida y económica de esta acción.

Como señala a su vez la mayoría, el Art. 3.10 de la Ley Núm. 38 de 2017, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de

---

[1] En su comparecencia ante nos, el Consejo expuso cándidamente que "existe[n] alrededor de ocho querellas que versan sobre los mismos hechos, y no es hasta que la parte [peticionaria] advino en conocimiento de la existencia de la presente, que presentó alegación responsiva". Véase, Petición de *Certiorari*, pág. 4. Es decir, no contestó la querella antes porque no se dio cuenta de que existía.

Puerto Rico (LPAUG), expresamente permite anotar la rebeldía de una parte debidamente citada que no comparece a cualquier etapa del procedimiento adjudicativo. 3 LPRA sec. 9650. Así también lo hace, más directamente, la Regla 8 del Reglamento Núm. 8034 de 14 de junio de 2011, Reglamento de Procedimientos Adjudicativos del DACo, el cual dispone que "el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación [de la querella]", y, además apercibe expresamente que "de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía".

Ante el mecanismo expresamente adoptado bajo nuestro ordenamiento administrativo, coincido con la mayoría en que nuestros pronunciamientos anteriores en cuanto a la anotación de rebeldía y sus efectos en el contexto de las Reglas de Procedimiento Civil --principalmente, que se den por ciertos los hechos correctamente alegados por el reclamante-- son compatibles con el trámite administrativo. Si no existiesen otros factores que, como veremos, están inexorablemente presentes en este caso, estaría conforme con una opinión que así lo paute formalmente.

II

Establecido lo anterior, no puedo endosar el resultado al que llega la mayoría para la situación de hechos realmente presente en este caso. En términos específicos, difiero vehementemente de la apreciación de la mayoría de

que "al considerar **las alegaciones** de la querella presentada por el recurrido forzoso era conceder la desestimación sumaria".[2] (Énfasis suplido.)

Surge claramente de la Opinión mayoritaria la creencia de que la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la Ley de Condominios, 32 LPRA sec. 1921a *et seq.*, exige como un requisito de forma esencial que el titular que interese impugnar un acuerdo tomado por el Consejo de Titulares **alegue** en su querella una de dos circunstancias: (a) que compareció a la asamblea y, en efecto, votó en contra del acuerdo, o (b) que existe justa causa para su incomparecencia, de no haber estado presente. La falta de esta alegación demuestra de por sí --según la mayoría-- que no existe controversia en cuanto a su incumplimiento con los requisitos estatutarios para instar su acción, y cierra irremediablemente la puerta a la revisión del acuerdo tomado.

Esta postura choca de frente con la letra del Art. 65 de la Ley de Condominios, 31 LPRA sec. 1923j. Según este artículo, es norma general que un titular puede impugnar los acuerdos del Consejo bajo tres posibles escenarios: (a) si son contrarios a la Ley, la escritura matriz o al reglamento del condominio; (b) si resultan gravemente perjudiciales a los intereses de la comunidad o a un titular; o (c) si son gravemente perjudiciales para algún

---

[2] Opinión mayoritaria, pág. 30

titular que no tenga obligación jurídica de soportarlo, y no haya sido previsible al momento de la compra. Íd. De entender que está presente alguna de estas condiciones, la impugnación debe presentarse dentro del término de treinta días, contados a partir de la fecha en que se tomó el acuerdo si se hizo en su presencia, o desde su notificación, si no estuvo presente. Íd.

Ahora bien, el Art. 65 de la Ley dispone expresamente lo siguiente:

> El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que **acreditar** que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá **probar** que su ausencia estuvo justificada. Íd.

A mi juicio, el texto citado no amerita mayor aclaración. "El que impugna un acuerdo del Consejo de Titulares adoptado en una reunión debidamente convocada, tendrá que demostrar que estuvo presente en la reunión en la que se tomó el acuerdo y no votó a favor del mismo o que si no estuvo presente, su ausencia se debió a razones justificadas". M. Godreau Robles, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3ª ed., San Juan, Ed. Situm, 2023, pág. 303. Si bien es cierto que la justa causa se acredita mediante explicaciones concretas y particulares, no podemos concluir razonablemente que estamos ante un requisito de contenido, sino ante uno

probatorio: "[a]l justipreciar las razones ponderadas por una parte [para acreditar la justa causa], el juzgador debe llevar a cabo un análisis cuidadoso de las explicaciones que **demuestran** el incumplimiento **y de la evidencia que lo sustenta**". (Énfasis suplido). *Rivera Marcucci et al. v. Suiza Dairy*, 196 DPR 157, 172 (2016).

Como se puede apreciar, el Art. 65 nada dispone en cuanto a requisitos de forma y contenido de una querella. Tampoco podemos inferirlos, pues nada en su letra sugiere que esa hubiese sido la intención legislativa.[3]

Así las cosas, comparto la apreciación del ilustrado foro intermedio en cuanto a que la determinación del DACo no se basa en evidencia sustancial que obre en el expediente administrativo. Al prescindir de la celebración de una vista para adjudicar la impugnación de los acuerdos alcanzados en estas asambleas, el DACo privó al señor Freyre Martínez de oportunidad de demostrar que estaba facultado para instar su recurso de revisión en primer lugar. Así, fundamentó su determinación exclusivamente en

---

[3] A manera de ejemplo, bajo la Ley Núm. 143 de 27 de junio de 1968, según enmendada, conocida como la Ley de Agencias de Cobro, el legislador plasmó expresamente su intención de imponer, como requisito jurisdiccional, lo siguiente:

Art. 17.- Prácticas Prohibidas. Ninguna agencia de cobros podrá:

...

13.- Radicar acción judicial en cobro de dinero sin antes haber requerido por escrito al deudor para que pague lo adeudado por correo certificado con acuse de recibo. **Ningún Tribunal podrá asumir jurisdicción en una acción de cobro de dinero tramitada por una agencia de cobro sin que <u>se alegue</u> y se pruebe el cumplimiento de este requisito.** 10 LPRA sec. 981p. (Énfasis suplido).

las alegaciones de las partes, las cuales, como sabemos, no constituyen prueba. Véase, *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981).

De igual modo, me resulta problemática la liberalidad con que la mayoría se permite inferir hechos --o más bien, la ausencia de ellos-- que allanan el camino a su conclusión de que no existe justa causa para la ausencia del señor Freyre Martínez a las asambleas en cuestión. Por un lado, estoy completamente de acuerdo con la visión de que un tribunal de justicia está autorizado a resolver un caso no solo a base de la evidencia que las partes presenten, sino en virtud de las inferencias lógicas y razonables que de esa evidencia pueda hacer. Véase, Regla 110 de Evidencia, 32 LPRA Ap. VI. Véase, además, *Díaz v. E.L.A.*, 118 DPR 395, 411 (1987)(opinión concurrente y disidente emitida por el Juez Asociado señor Rebollo López). Sin embargo, este ejercicio no puede confundirse con la adopción a ciegas de alegaciones que no han sido substanciadas de forma alguna.

A mi modo de ver, es este el mayor defecto de la Opinión que hoy emite este Tribunal. A base de cuatro hechos que el foro administrativo estimó "probados", esta Curia da por buena la contención de que no hace falta pasar prueba, bastándole no hallar una alegación específica en la querella para inferir que no existe justificación alguna que ofrecer. No estoy de acuerdo con este análisis. En rigor, correspondía al foro administrativo recibir y

examinar la prueba, y realizar las inferencias que pudieran y debieran hacerse. Examinada la Ley de Condominios en la perspectiva correcta, me parece un error significativo adoptar el criterio del DACo y desestimar la querella sin celebrar una vista. Por el contrario, al así obrar, incurrió en un claro e insalvable abuso de discreción que, sin embargo, la mayoría de esta Curia opta por refrendar.

III

Tampoco puedo abstraerme de las consecuencias que a mi juicio tendrá la determinación que hoy emite la mayoría en cuanto a los procedimientos adjudicativos ante el DACo, sin aviso previo a las partes que allí litigan actualmente. En primer término, es notable que hoy se impone un estándar mucho más riguroso en cuanto a la suficiencia de las alegaciones formuladas ante un foro administrativo que el aplicable en nuestros tribunales. Como se sabe, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, dispone que una alegación que exponga una solicitud de remedio contendrá una relación **sucinta y sencilla** de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y una solicitud del remedio a que crea tener derecho. Es norma reiterada que nuestro ordenamiento sigue un enfoque liberal en cuanto a la suficiencia de las alegaciones: ciertamente, la Regla 6.1 requiere solo una relación "sucinta y sencilla" de hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, no elaborar estos hechos con detalles. Véase, R. Hernández

Colón, *Derecho Procesal Civil*, 5ta Ed., LexisNexis, Puerto Rico, 2010, sec. 2401, pág. 248.

Ahora bien, aun ante la liberalidad con la que deben ser examinadas las alegaciones bajo nuestro ordenamiento procesal, deben incluirse hechos suficientes que eleven la reclamación más allá de la especulación. *Íd.*. Véase, además, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Si no se cumple este estándar, podría proceder la desestimación de la acción bajo el fundamento de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. Véase Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5). Sin embargo, aun ante este escenario, una demanda no se desestima a menos que se demuestre que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar, o cuando su alegación no puede ser enmendada. *Aut. De Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008).

En comparación, el estándar aplicado a esta querella fue mucho más riguroso, pues una vez presentada, al no cumplir con el presunto requisito de alegar el voto en contra del acuerdo o la justa causa para no asistir a la asamblea, la impugnación del señor Freyre Martínez fue desestimada sin más trámite administrativo. No se le concedió oportunidad para enmendar la querella o realizar exposiciones más definidas. Meramente omitir la justa causa

conllevó la desestimación de la acción, sin posibilidad de volverla a instar por tratarse de una determinación en los méritos.

Este escenario es altamente preocupante, pues la forma en que el DACo decretó la desestimación en este caso –-la cual hoy la mayoría valida-- es indicativa de cómo manejará las querellas actualmente ante su consideración. De así determinarlo, procedería la desestimación sumaria de toda querella actualmente ante su consideración que no cumpla con el supuesto requisito de **alegar** que votó en contra del acuerdo impugnado o, en su defecto, expuso la justa causa para su incomparecencia a la asamblea en la que se adoptó el acuerdo. Esto resulta en extremo paradójico, dada la mayor flexibilidad con la que se supone que se atiendan los procedimientos administrativos.

En este punto, amerita destacar que el Reglamento de Procedimientos Adjudicativos del DACo fomenta la comparecencia de consumidores **por derecho propio**, y que personal del Departamento se supone que asesore al reclamante al identificar aquellos documentos necesarios para presentar la queja inicial.[4] La supuesta omisión del señor Freyre Martínez refleja que, contrario a lo que dispone su propio reglamento, la agencia no le asesoró en cuanto a este "requisito estatutario". De haberlo hecho, hubiese incluido esta información en su querella.

---

[4] Véase Regla 5.1 del Reglamento de Procedimientos Adjudicativos.

IV

Establecido lo anterior, mis reservas con la Opinión no versan sobre el resultado desestimatorio, sino sobre los fundamentos que articula la mayoría en su respaldo. Examinado detenidamente el trasfondo procesal relatado en la ponencia, entiendo que existen hechos en este caso que nos hubiesen permitido alejarnos de la interpretación forzada de la Ley de Condominios en que se basa la Opinión, y nos hubiesen llevado a decretar la desestimación de la querella instada por el señor Freyre Martínez sin ulterior expresión por esta Curia.

Para explicar mi posición, entiendo necesario examinar nuevamente algunos de los hechos que dieron pie al recurso, resaltando aquellos que considero centrales en mi evaluación del caso.

Como bien señala la mayoría, este recurso está estrechamente relacionado al caso *Junta de Planificación v. Condominio Sol y Playa y otros*, Civil Núm. AG2021CV00945, atendido en la Sala de Agudilla del Tribunal de Primera Instancia. En este caso se declaró nulo un permiso de construcción para reconstruir las áreas recreativas del Condominio Sol y Playa que quedaron destruidas por el paso del huracán María, a saber, una piscina, un jacuzzi, baños, gazebos y aceras ubicadas en el área recreativa del condominio. Como parte de la sentencia, se ordenó al Consejo de Titulares a demoler cualquier obra construida bajo el permiso anulado, remover

los escombros y devolver la propiedad así afectada a su estado natural.[5]

En atención a esta sentencia, el 28 de febrero de 2023 el DACo declaró con lugar una querella anterior presentada por el señor Freyre Martínez, en la cual este impugnó la imposición de una derrama para construir los mencionados elementos comunes del condominio.[6] Entre sus determinaciones de hecho, el DACo decretó que "[e]l proyecto de reconstrucción de las áreas comunes y sobre el cual el Consejo de Titulares del Condominio Sol y Playa aprobó una derrama en asamblea celebrada del 5 de octubre de 2019, no tiene permiso de construcción para realizar el mismo por determinarse que el mismo es nulo".[7] En consecuencia, determinó probado que "[d]icho proyecto de reconstrucción no puede levarse a cabo tal y como fue presentado y aprobado en dicha asamblea por el Consejo de Titulares".[8] En mérito de lo anterior, declaró nula la derrama impugnada y ordenó la devolución del dinero cobrado a los querellantes como resultado de esta.

Anulados el permiso de construcción y la derrama aprobada para costearlo, el Consejo inició esfuerzos para sufragar los costos de demolición y reparación ordenada por el foro de instancia. Así, **el 8 de julio de 2023 celebró**

---

[5] Véase Apéndice del Recurso, págs. 209-226.
[6] Íd., págs. 124-135.
[7] Íd., pág. 127, Determinación de hecho núm. 19.
[8] Íd.

**una asamblea extraordinaria para aprobar una derrama para cumplir con la sentencia emitida en el caso AG2021CV00945.**[9]

De la minuta no surge que el señor Freyre Martínez hubiese comparecido a esta asamblea. No obstante, **el 7 de agosto de 2023, el recurrido presentó ante el DACo la Querella Núm. C-SAN-2023-0015678, para impugnar la derrama aprobada el 8 de julio de 2023.**[10] Indicó que esta derrama no fue autorizada para cumplir con la orden judicial, sino para "presionar de manera indebida a los titulares del Condominio".[11] Añadió que "[e]l aquí compareciente emitió su voto en contra por escrito como lo faculta la ley".[12] Reiteró a su vez que la derrama era ilegal y que "la Resolución del DACO con fecha de 28 de febrero de 2023 declara nulas todas las actuaciones del Consejo de Titulares y nos exime del pago de cualquier derrama posterior relacionada con los hechos atendidos en la Resolución".[13]

Pendiente de adjudicación esta querella, **el 17 de septiembre de 2023, el Consejo de Titulares celebró una nueva asamblea para aprobar una segunda derrama,** cuyo objetivo sería "cubrir los costos totales de la demolición en cumplimiento con la [s]entencia final y firme adversa a nuestro Consejo de Titulares".[14] Así las cosas, **el 11 de**

---

[9] Íd., págs. 173-177.
[10] Íd., págs. 178-185.
[11] Íd., pág. 184.
[12] Íd.
[13] Íd., págs. 184-185.
[14] Íd., págs. 186-190.

**octubre de 2023, el señor Freyre Martínez enmendó la Querella Núm. C-SAN-2023-0015678.**[15]

Mientras esto sucedía, **el 2 de octubre de 2023**, la Junta de Directores cursó al señor Freyre Martínez una carta de cobro indicándole que, según sus récords, "su pago de derramas aprobadas y mantenimiento se encuentran en atraso hasta 10/01/2023".[16] A renglón seguido, identificó las siguientes partidas presuntamente adeudadas por el recurrido: (1) "Gastos Abogados Facturada INV #038", con fecha de 1 de noviembre de 2021, por la cantidad de $4,221.73; (2) "Derrama Demolición #1", de 8 de julio de 2023, por la cantidad de $12,002.36; (3) "Derrama Demolición #2, de 17 de septiembre de 2023, por $10,673.71; y (4) "Cuota de mantenimiento", con balance de $87.14 en favor del recurrido.

El total cobrado al señor Freyre Martínez en estos conceptos ascendía a $26,810.66. Sin embargo, la Junta de Directores indicó que "[l]e solicitamos formalmente el pago de $32,136.26", en un término de treinta días.

En respuesta, **el 23 de octubre de 2023 el señor Freyre Martínez presentó la Querella Núm. C-SAN-2023-0017236 objeto del presente recurso**, contra la Junta de Directores y el Consejo de Titulares del Condominio Sol y Playa.[17] De

---

[15] Como indica en una nota al calce la ponencia mayoritaria, esta enmienda no fue incluida como parte del apéndice del recurso presentado por el Consejo, ni en el alegato de la parte recurrida. Véase, Opinión, pág. 9.
[16] Íd., pág. 121.
[17] Véase Apéndice del Recurso, págs. 105-109.

su relativamente breve exposición surge que recibió "insistentes cartas de cobro" por cargos adicionales relacionados a la verja ilegalmente construida, y su oposición a este cobro por ser "evidente la intención de la Junta [de] tratar de desvincular los costos relacionados a la demolición, remoción de escombros, restauración del hábitat, costos legales, entre otros gastos[,] de la construcción de la verja ilegal".[18] Según el recurrido, "desde el principio" se opuso a la construcción de esta verja con micropilotes, pues la Junta no consideró sus repercusiones, y su querella anterior impugnando la "derrama ilegal" fue declarada con lugar, por lo que el DACO le eximió de su pago. Ante esta determinación, entiende que no es responsable del pago por ningún evento relacionado a la construcción, por la remoción de la verja, ni por los gastos legales incurridos ante la insistencia de la Junta en construirla.

El señor Freyre Martínez añade en esta querella que, a pesar de sus objeciones por tratarse de una costosa mejora y no de un reemplazo, la Junta continuó el proyecto, lo cual resultó en "graves consecuencias ambientales, legales, emocionales y económicas para los titulares". Sostuvo además que "juntas sucesivas" del Condominio conformadas "sin seguir las directrices establecidas" en la Ley de Condominios, *supra*, insistieron en "ignorar,

---

[18] Íd., pág. 108.

obstruir y excluir a quienes pudieran presentar opciones diferentes de mitigación". Más aun, se rehusaron a expedirle cartas de cumplimiento con el pago de cuotas de mantenimiento para impedirle ser escuchado en DACo y "silenciar nuestra voz y voto en reuniones".[19] En mérito de lo anterior, el señor Freyre Martínez solicitó del DACo que le eximiera de toda responsabilidad financiera y legal, pasada, presente o futura, por acciones y omisiones relacionados a la construcción de la verja.[20]

De este abreviado tracto procesal se puede colegir, en primer lugar, que **la derrama aprobada en la asamblea del 8 de julio de 2023 ya había sido objeto de impugnación por el señor Freyre Martínez mediante la Querella Núm. C-SAN-2023-0015678.** De igual modo, **el recurrido enmendó esta querella tras la aprobación de la segunda derrama.** Finalmente, **presentó la querella objeto de este recurso luego de recibir la carta de cobro que le remitió la Junta de Directores.**

A mi entender, es significativo que ambas derramas hubiesen sido objeto de impugnación en la Querella Núm. C-SAN-2023-0015678. Aunque en un contexto un tanto distinto a este, en el pasado hemos resuelto que tener en dos foros distintos de manera simultánea dos casos que versan sobre la misma controversia no contribuye a la economía procesal, y abre la puerta a la posibilidad de resultados

---

[19] Íd.
[20] Íd., pág. 109.

contradictorios. *AMPR et als. v. Sist. Retiro Maestros II,* 190 DPR 89 (2014). Es igualmente normativo que nuestro ordenamiento procesal civil rechaza la adjudicación por dos tribunales de una cuestión que es esencialmente indivisible. *Diez Rodríguez v. Guzmán Ruiz*, 108 DPR 371, 378 (1979).

En este caso, la errática exposición del querellante podría conducir a confusión, pues un examen detenido de ambas querellas refleja razones de pedir virtualmente idénticas. Atendidas desde el punto de vista más favorable al querellante, la querella Núm. C-SAN-2023-0017236 objeto de este recurso parece ir dirigida en parte a impugnar la gestión de cobro de las derramas, no las derramas como tal. Sin embargo, su súplica es inequívoca: "[s]olicitamos a Daco, que nuevamente intervenga y se nos exima del pago de CUALQUIER DERRAMA concerniente a la verja que ilegalmente fue construida en el Condominio Sol y Playa". (Énfasis en el original). Bajo las normas reseñadas, esta querella no podía sobrevivir.

V

En resumen, el razonamiento empleado por la mayoría para decretar la desestimación de la querella instada por el señor Freyre Martínez acarrea consecuencias que no estoy dispuesto a avalar. Otro camino conducía al mismo resultado, sin necesidad de depender de una interpretación forzada de la Ley de Condominios. Es por ello que me veo

obligado a rechazar los fundamentos expuestos en la ponencia mayoritaria, pero a concurrir con su resultado.


Raúl A. Candelario López
Juez Asociado