Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| SLAKE, LLC RECURRIDO v. Consejo de Titulares Condominio Madrid; Beth Bedell, como Presidenta de la Junta de Directores del Condominio Madrid RECURRENTE | TA2025RA00317 | *Recurso de Revisión* procedente del Departamento de Asuntos del Consumidor (DACO) Querella Núm. C-SAN-2024-0019700 Sobre: Reparación de Ventanas Privativas; Danos y Perjuicios; Ley de Condominios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

*Grana Martínez, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de abril de 2026.

Comparece ante nos el Consejo de Titulares del Condominio Madrid (en adelante "Consejo" o "Recurrente") mediante un Recurso de Revisión instado el 29 de octubre de 2025. En su recurso, nos solicita que revoquemos la Resolución emitida por el Departamento de Asuntos del Consumidor (en adelante "DACO" o el Departamento) el 29 de septiembre de 2025.

Por los fundamentos que expondremos a continuación se revoca la Resolución del DACO. Exponemos el trasfondo fáctico y procesal que acompaña la presente controversia.

**I.**

El 7 de octubre de 2024, Slake (en adelante el "Recurrido") presentó una Querella en el Departamento de Asuntos del Consumidor en contra del Consejo y la presidenta de la Junta de directores, la Sra. Beth Bedell. La Querella contempla las siguientes causas de acción: filtraciones por ventanas comunales y daños y

perjuicios.[1] Las presuntas filtraciones se percolan a través de las ventanas comunales del Condominio.[2] Posteriormente, el 7 de octubre de 2024 se enmendó la querella haciendo constar que se concedía un término de 20 días para contestar la misma.

El 22 de octubre de 2024, la Sra. Beth Bedell presentó un escrito titulado Aviso de Primera Comparecencia *Pro Se* y Solicitud para Unirse a las Posiciones del Consejo, sin someterse a la jurisdicción de la agencia.[3] Esta moción tenía como propósito unirse a todas las posiciones del Consejo en el pleito a través de la presidenta o del representante legal del Consejo.[4]

El 22 de octubre de 2024, el Recurrente instó una *Moción para Asumir Representación Legal del Consejo y Solicitud de Término para Alegar.* Por consiguiente, solicitó un plazo de treinta (30) días para responder la Querella.[5] Del expediente físico administrativo presentado por DACO ante este foro, no surge que el Departamento se haya expresado para conceder o rechazar dicha petición.

El 12 de diciembre de 2024, el Recurrido presentó una Moción de Solicitud de Anotación de Rebeldía, debido a que había expirado el término de la prórroga antes solicitada y no se había presentado la alegación correspondiente o defensa alguna.[6] El Consejo se opuso mediante moción.[7] En dicho escrito reconoció que había transcurrido el término provisto por el Reglamento del DACO, para presentar su Contestación a Querella. Justificó su tardanza en que había referido la querella:

> [A] su compañía de seguros quien, a su vez, asignó al abogado que suscribe en la defensa del mismo. No obstante, y debido a la existencia de múltiples reclamaciones previas precisamente por la misma parte Querellante ello requirió un análisis mayor de la

---

[1] Véase Entrada número 1, Sistema Unificado de Administración y Manejo de Casos (SUMAC) ante el Tribunal de Primera Instancia (TPI), pág. 001.
[2] *Íd.*,004.
[3] Véase Ent. Sumac. TPI. Núm. 4. pág. 0125.
[4] *Íd.*,0127.
[5] Véase Ent. Sumac. TPI. Núm. 6. pág. 0133.
[6] *Íd.*,0135.
[7] Véase Ent. Sumac. TPI. Núm. 7. pág. 0137.

extensión del contrato de seguros habido entre dicha compañía y el Consejo de Titulares Condominio Madrid. La información obtenida por el abogado suscribiente es que existe una controversia sobre la cubierta en el presente caso, asunto que maneja exclusivamente la compañía de seguros y de forma directa con el asegurado y la parte Querellada Consejo de Titulares Condominio Madrid. En adición a ello, el abogado suscribiente aún no tiene acceso al sistema SIAC de la Honorable Agencia.[8]

Cinco días después, el 17 de diciembre de 2024, el Consejo presentó una Moción de desestimación, aduciendo que la querella estaba prescrita.[9] Sostuvo que de las alegaciones de la querella surgía qué, Slake no imputaba violaciones del Consejo a la Ley de Condominios, la Escritura matriz o el Reglamento, por lo cual el término para presentar la acción era de 30 días, conforme el Artículo 65 de la Ley de Condominios. Razonaba que la querella había sido presentada en exceso de 30 días, razón por la cual a su entender estaba prescrita. A su vez, el 18 de diciembre de 2024, el Recurrido formuló su Oposición a Moción de Desestimación por Prescripción y Reiterando Anotación de Rebeldía y Señalamiento de Vista. En síntesis, expuso que alegaba una violación a la Ley de Condominios, para la cual el término prescriptivo era de 2 años, término que no había transcurrido sin presentarse reclamación. Además, añadió que también reclamaba daños y perjuicios para lo cual el término era de un año.[10]

El 5 de febrero de 2025, el Consejo presentó una Urgente Moción de Desestimación de Casos por deuda pendiente con el consejo de titulares y Moción de Reconsideración de orden del 5 de febrero de 2025. Sostuvo que Slake mantenía tres querellas en DACO en su contra, una para reclamar la remoción de una cisterna privada de áreas comunales del edificio, otra para cuestionar el arreglo de ciertas ventanas, y otra para impugnar la convocatoria

---

[8] *Íd.*, 0137-0138.
[9] Véase Ent. Sum. TPI. Núm. 8. pág. 0141.
[10] Íd., pág. 0143.

de una asamblea extraordinaria a celebrarse ese mismo día, en la cual, como remedio alternativo, solicitaba se le permitiera participar en dicha asamblea, a pesar de tener una deuda pendiente. Puntualizó que la impugnación de esa deuda estaba ante la consideración del Tribunal de Primera Instancia.[11] Por otro lado, el Recurrido realizó una Solicitud de Descalificación del Lcdo. Brian Dick de la representación del Consejo por incumplimiento con la Ley Núm. 129 – 2020 y Oposición a Mociones de Consolidación y Desestimación. Sostuvo en síntesis, que el licenciado Dick debía ser descalificado, pues su representación no había sido autorizada por el Consejo de Titulares en violación a los Artículos 49 y 54 de la Ley de Condominios. Reclamó, además, que no se había notificado del caso al Consejo de Titulares por lo que no había autorización de uso de fondos para pagar al representante legal. También se opuso a que se consolidaran todas las querellas presentadas contra la Junta de Directores en DACO y aseguró estar al día en sus cuotas al momento de la presentación de la querella. Sobre la deuda por su parte del seguro afirmó que impugnaba la cuantía ante el foro judicial y en ese foro ya había consignado la deuda por lo cual no tenía deuda alguna que ameritara la desestimación de la querella.[12] Dichas mociones en pro y en contra de la desestimación de la querella no fueron atendidas por DACO a pesar de que trataban sobre aspectos jurisdiccionales.

Así las cosas, surge del expediente físico presentado por DACO ante este foro, que la vista administrativa de la querella fue celebrada el 24 de junio de 2025. Surge de la Minuta y Orden y citamos:

> "[a]ntes del comienzo de la vista la parte querellante trajo a la atención del Departamento varios asuntos. Entre ellos el que la parte querellada no hubiese

---

[11] Véase Ent. Sum. TPI. Núm. 10. pág. 0147.
[12] Véase Ent. Sum. TPI. Núm. 13. pág. 0281. Del escrito no se desprende la fecha de presentación.

contestado la querella y existían mociones pendientes de adjudicar. Sobre este particular, la parte querellada indicó que se había realizado un planteamiento de desestimación, toda vez que, de momento, la parte querellante tiene una deuda por concepto del seguro del condominio. Conforme fue sometido por la parte querellada con su prueba documental, se expidió una certificación de deuda de póliza de seguro con fecha de 21 de marzo de 2025, donde se certifica que la parte querellante tiene una deuda de $10,532.95 por concepto de la prima vencida de la póliza comunal de seguros. Sobre este particular, la parte querellante indica que el pago de la póliza fue consignado ante el Tribunal de Primera Instancia, en una demanda presentada y que está pendiente de adjudicar. La parte querellada indica que dicha consignación no fue aceptada por el Tribunal.

A los fines de que el Departamento pueda examinar detenidamente los planteamientos, se le concedió a la parte querellada un término de 5 días para que someta dicho planteamiento por escrito, junto con la documentación correspondiente en apoyo a su planteamiento. Una vez presentado el escrito, la parte querellante tendrá igual termino de 5 días para expresarse. Una vez sometidos los escritos, el Departamento resolverá el asunto."

Para cumplir con lo antes consignado, el 30 de junio de 2025, el Consejo presentó por tercera vez una solicitud de desestimación de la querella en su contra mediante *Moción en Cumplimiento de Orden y para Reanudar la Solicitud de Desestimación por Deuda Milenaria Pendiente con el Consejo de Titulares*. Arguyó que la Ley de Condominios establece que el titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendría que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares, conforme el Artículo 65 de la Ley de Condominios. Sostuvo que, en los 14 meses previos, Slake había presentado 13 reclamaciones en su contra, sin embargo, adeudaba $10,532.95 en primas vencidas de seguro comunal y acompañó certificación de deuda. Sostuvo que el Tribunal en el caso SJ2025CV00769 se dio por enterado del depósito de fondos por parte de Slake, dejando para una fecha futura si lo aceptaba como consignación. Afirmó que la Ley de Condominios impone la

obligación de pagar las primas de seguro aprobadas por el Consejo de Titulares, sin importar los casos que haya pendiente en los Tribunales. Además, de exigir que esté al día en el pago de cuotas y obligaciones como requisito para presentar reclamaciones contra el Consejo de Titulares. Puntualizó que en cuanto a los hechos particulares de la querella objeto de este recurso, reconocía que existía una excepción al requisito de no deuda, precisamente cuando la impugnación sea para cuestionar la deuda que alegadamente tenía una parte. No obstante, en esta querella no se cuestionaba la deuda, sino que Slake solicitaba al Consejo que arreglara unas ventanas y le compensara por los daños y perjuicios. Por lo que, a su entender, Slake tenía que obligatoriamente estar al día con sus primas para proseguir con la querella. Exponía que la impugnación de la deuda en el TPI en un caso separado e independiente, ciertamente no era una licencia para presentar otras reclamaciones en el DACO sin estar al día en sus pagos, incluyendo casos temerarios sobre cisternas, ventanas, documentos, asambleas, y transacciones judiciales, como los que había presentado en su contra.[13] A su vez, el Recurrido instó su *Oposición a Moción de Desestimación de Querella por Alegada Deuda con el Consejo de Titulares y en Solicitud de Orden Provisional de Cesar y Desistir* el 1 de julio de 2025. Reiteró que al momento de presentar la querella no tenía deuda y que, dicha supuesta deuda, era objeto de un proceso judicial alterno entre las partes. Además, puntualizó que en un procedimiento alterno ante DACO el Juez Administrativo había reconocido que la existencia de la impugnación en el tribunal impedía utilizar ese argumento para impedir el acceso de Slake como titular querellante. Afirmó haber depositado en el TPI $9,279.25 arguyendo que era el Consejo quien no aceptaba el pago. A su

---

[13] Véase Ent. Sum. TPI. Núm. 17. pág. 0496.

entender, era un absurdo reclamar como impedimento al acceso una deuda que era posterior al acceso.[14]

El 9 de julio de 2025, el DACO emitió una Notificación y Orden analizando el asunto de la deuda por concepto de primas de seguro y concluyendo que se tenía que presentar una certificación negativa de deuda actualizada y emitida por la administración del Condominio. En caso de no someter la certificación se le archivaría sin perjuicio.[15] Posteriormente, Slake presentó una *Moción en Cumplimiento de Orden para Acreditar el Pago de Primas de Seguro Comunal y en Solicitud de Señalamiento de Vista Administrativa.*[16] Así las cosas, DACO emitió Orden mediante la cual señaló vista administrativa para el 14 de agosto de 2025[17]. En ella se expresó, y entre otros, acerca de la presentación de prueba documental y pericial sin señalar inconveniente alguno en relación con las partes.

El 15 de agosto de 2025, el Consejo presentó nuevamente un escrito titulado *Solicitud de Desestimación y Reafirmación de la Moción de Imposición de Honorarios de Abogados.* Esta vez, su argumento para desestimar se basaba en que el Consejo nunca ha aprobado una derrama para la reparación; que el Consejo no tenía funciones directas de reparaciones, inspecciones, ni obras de mantenimiento, ya que tales gestiones correspondían a la Junta de Directores como órgano administrativo y ejecutivo. Para el Consejo se pretendía, mediante la querella, responsabilizar a un cuerpo colegiado por una acción que no entra en el ámbito de sus competencias ni de su responsabilidad legal. Concluían que la falta de fundamento legal de la reclamación era evidente y señalaban que no existían alegaciones que ameritasen la concesión de un remedio. Insistía en que precisamente era el Consejo de Titulares el único que

---

[14] Véase Ent. Sum. TPI. Núm. 18. pág. 0614.
[15] Véase Ent. Sum. TPI. Núm. 19. pág. 0653.
[16] Véase Ent. Sum. TPI. Núm. 20. pág. 0656.
[17] Dicha vista se reséñalo por DACO debido a problemas con los aires acondicionados para el 27 de agosto de 2025.

podía reclamar un deber fiduciario a un miembro de la Junta.[18] Por el contrario, el 5 de agosto de 2025, el Recurrido replicó con su *Oposición a Solicitud de Desestimación*. Explicó que el Consejo levantaba por primera vez planteamientos que pudo y debió haber formulado desde la presentación de la Querella el 20 de septiembre de 2024, y no lo hizo. Catalogó esa acción como una maniobra dilatoria y un claro intento de entorpecer el proceso. En los méritos sostuvo que una derrama, para obras extraordinarias de mantenimiento, no requería unanimidad sino mayoría. Puntualizó que pretender, en esta etapa del proceso, cuestionar e impugnar la validez de su propia determinación, refiriéndose al Consejo, constituía una contradicción insalvable y resultaba jurídicamente improcedente. Distinguió las obras de mejoras de aquellas de mantenimiento como las que reclamaba, las cuales se aprobaban conforme la Ley de Condominios por mayoría.[19]

Finalmente, el 25 de agosto de 2025, el DACO emitió una notificación y orden declarando un "No Ha Lugar" a la solicitud de desestimación.[20]

Dos días después, el 27 de agosto de 2025, se celebró la vista en su fondo en la que Slake reiteró la solicitud de anotación de rebeldía, la cual se encontraba sometida desde el 12 de diciembre de 2024 y el hecho de que, a la fecha de la vista, aun el Consejo no había presentado su contestación a la querella. Esto a pesar de que, según DACO, había sido apercibida en la audiencia del 24 de junio de 2025.[21]

El 29 de septiembre de 2025, el DACO emitió su Resolución en la cual dispuso que:

> [A]l no figurar en el expediente administrativo la correspondiente contestación a Querella, a pesar de que

---

[18] Véase Ent. Sum. TPI. Núm. 22. pág. 0669.
[19] Véase Ent. Sum. TPI. Núm. 23. pág. 0695.
[20] Véase Ent. Sum. TPI. Núm. 24. pág. 0721.
[21] Hemos revisado la Minuta de la reunión del 24 de junio de 2025 y de la misma no surge apercibimiento alguno relacionado con la Contestación de la Querella.

esta fue presentada el 20 de septiembre de 2024, y la parte querellada fue apercibida de ello durante la audiencia de 24 de junio de 2025,[22] el Departamento procedió anotarle la rebeldía al amparo de la Regla 8.1 del Reglamento de Procedimientos Adjudicativos (8034).[23]

Inconforme con esta determinación, el 29 de octubre de 2025, el Consejo presentó un Recurso de Revisión Judicial en el Tribunal de Apelaciones en el cual realizó el siguiente señalamiento de error:

El DACO actuó arbitrariamente y en violación al debido proceso de ley al anotar la rebeldía a la parte querellada- recurrente en corte abierta sin decisión escrita, a pesar de la participación activa del Consejo en el caso y a pesar de tener una solicitud de desestimación pendiente de adjudicar.

El 2 de diciembre de 2025, el Recurrido presentó ante esta curia una Moción de Desestimación por falta de Jurisdicción.[24] Según surge del escrito, se alegó que la Junta de Directores nunca obtuvo la autorización del Consejo requerida por la Ley de Condominios de 2020 para presentar el recurso de revisión administrativa ante nuestra consideración. Así incumplió con la Ley Núm. 129-2020, en específico el Art. 49 (b), dado que el estatuto exige que cuando se formule una reclamación contra la Junta de Directores, el Consejo de Titulares sea convocado en Asamblea extraordinaria y apruebe por mayoría la acción que vaya a ser instada en los foros pertinentes, si alguna. Puntualizó que la Junta nunca solicitó dicha autorización.[25] Asimismo, se expone que la Presidenta también incumplió con notificar al Consejo de las acciones tomadas dentro de los treinta (30) días siguientes, según lo requiere el Art. 54 de la Ley Núm. 129-2020. [26]

---

[22] Destacamos que de la Minuta y Orden emitida por el DACO el 24 de junio de 2025 no se desprende que haya habido un apercibimiento por la parte de la agencia gubernamental en la que se tuviera que contestar la Querella. Véase Ent. Sum. TPI. Núm. 16. pág. 0494.

[23] Véase Ent. Sum. TPI. Núm. 24. pág. 0960.

[24] Véase Ent. Sum. TA Núm. 4.

[25] Íd., pág. 7.

[26] *Íd.*

El 18 de diciembre de 2025, el Consejo presentó su Oposición a Desestimación.[27] En este escrito se estableció que, ni la Ley Núm. 129-2020 ni la jurisprudencia, han creado un requisito jurisdiccional de notificación para defenderse en el foro apelativo.[28]

El 7 de enero de 2026, el Recurrente formuló su Alegato Suplementario en apoyo al Recurso de Revisión. Reiterando que se revoque la Resolución del DACO, incluyendo la anotación de rebeldía y devuelva el caso al foro administrativo para que celebre el juicio de nuevo. [29]

## II.

## A. Jurisdicción

La jurisdicción ha sido definida como el poder o autoridad que tienen los tribunales o agencias administrativas para resolver los casos y controversias. *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 709 (2014). La jurisdicción no se presume y los tribunales no tienen discreción para asumirla donde no la hay. *Maldonado v. Junta de Planificación*, 171 DPR 46, 55 (2007).

Los tribunales tienen el deber de examinar su propia jurisdicción como la del foro de donde se apela una determinación. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). Asimismo, se ha expuesto que los tribunales tienen que ser celosos guardianes de su jurisdicción, debido a que los asuntos relacionados con estas son privilegiadas. *Ruiz Camilo v. Trafon Group*, Inc. 200 DPR 254, 268 (2018). Cuando se cuestiona la jurisdicción por alguna de las partes o cuando no ha sido planteada por estas, el tribunal debe evaluar y examinar con rigurosidad el asunto jurisdiccional, dado que este incide en el poder de adjudicar una controversia. *Íd.*

---

[27] Véase Ent. Sum. TA Núm. 8.
[28] *Íd.*
[29] Véase Ent. Sum. TA Núm. 9.

El Tribunal Supremo de Puerto Rico en *MCS Advantage, Inc., v. Fossas Blanco et al.*, 211 DPR 135, 146 (2023), expuso que la falta de jurisdicción ocasiona las siguientes consecuencias:

> (1) No es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco este puede arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio* [por su propia iniciativa].

Si el tribunal entiende que no tiene jurisdicción para atender un caso corresponde declararlo y desestimarlo sin entrar en los méritos de la controversia. *Íd.*

Por último, para que se considere que *existe un requisito jurisdiccional este debe surgir expresamente de la ley* o de la intención legislativa. (Énfasis suplido.) *Benítez Nieves v. ELA et al*, 202 DPR 818, 829 (2019).

### A. Ley de Condominios de Puerto Rico.

La Ley de Condominios de Puerto Rico formula una "política pública de establecer un régimen jurídico que facilite la vida en convivencia en los condominios y propicie la disponibilidad de viviendas en un área restringida de terreno". *JJJ Adventure, LLC v. Consejo de Titulares y otros*, 2025 TSPR 123, 216 DPR ___ (2025).

El Art. 49 de la Ley Núm. 129 -2020 crea los poderes y deberes que tiene el Consejo de Titulares. En específico el inciso (b) del antes mencionado artículo establece que el Consejo de Titulares tiene que "[c]onocer las reclamaciones que los titulares de los apartamentos formulen contra los aludidos en el inciso (a) y tomar las medidas correspondientes, que puede incluir la remoción de los mismos, por acuerdo mayoritario tomado en reunión extraordinaria convocada al efecto". 31 LPRA sec. 1922u.

Por otro lado, el Art. 54 de la Ley de Condominios de Puerto Rico crea los poderes y deberes del Presidente de la Junta de Directores. Este estatuto dispone que:

> Cuando se trate de acciones para hacer cumplir esta o cualquier otra ley aplicable, el reglamento del condominio o los acuerdos del Consejo de Titulares, o cuando el Consejo de Titulares o la Junta de Directores, en representación de este, deba comparecer en pleito como demandado o querellado, el Presidente podrá comparecer a nombre de dichos organismos y presentar las acciones y defensas que estime procedentes, seleccionar la representación legal que estime conveniente, previa consulta a la Junta. De las acciones tomadas, deberá notificar a los titulares dentro de los treinta (30) días siguientes. 31 LPRA sec. 1922z.

Por otro lado, el Artículo 65 de la Ley de Condominios dispone que las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares, pueden ser impugnados por los titulares. Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. … 31 LPRA sec. 1923.

## B. Rebeldía.

Según el tratadista Hernández Colon la rebeldía "es la posición procesal en que se coloca a la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir un deber procesal".

R. Hernández Colon, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6.ª ed. rev., San Juan, Ed. Lexis Nexis, 2017, pág. 327. El fin de este mecanismo procesal es evitar la demora como estrategia de litigación. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 588 (2011).

La sección 3.10 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9650 expone sobre la Rebeldía que:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación*, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible*. (Énfasis suplido).

Por otro lado, la Regla 8.1 del Reglamento de Procedimientos Adjudicativos del DACO establece en torno a la notificación de querellas lo siguiente:

> El Departamento notificará a todos los querellados la querella radica en su contra. Esta notificación será un aviso escrito de lo que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, *advirtiendo* además que de no recibirse la contestación a la querella en dicho termino se le anotaría la rebeldía. (Énfasis suplido.) Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, Departamento de Estado, 14 de junio de 2011, pág. 9.

De acuerdo con el Prof. Echevarría Vargas en el Derecho Administrativo se debe entender que aplican los mismos elementos procesales establecidos en las Reglas de Procedimiento Civil. J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5.ª ed. rev., San Juan, Ed. Situm 2023, pág. 222. A manera analógica y según lo establece la Regla 45. 1 de Procedimiento Civil. 32 LPRA Ap. V, se permite la anotación de rebeldía por incomparecencia cuando una parte después de haber sido notificada *no se defiende mediante moción* ni presenta su alegación responsiva. *Mitsubishi Motors v. Lunor y otros,* 212 DPR 807, 824 (2023).

Recientemente, el Tribunal Supremo de Puerto Rico resolvió el caso de *Freyre Martínez v. Consejo Titulares*, 2026 TSPR 20, 217 DPR __ en el cual trata la figura procesal de la Rebeldía estableciendo la compatibilidad de las interpretaciones de esta figura en el ámbito procesal civil con el procedimiento administrativo. En esta ocasión, el Tribunal Supremo confirmó al Tribunal de Apelaciones en cuanto a que el DACO tenía que anotar la Rebeldía, debido a que habían transcurrido más de siete (7) meses desde la presentación de la Querella sin que se solicitara una prórroga oportunamente. *Íd.*, pág. 27. Asimismo, expusieron que "[e]ste razonamiento adquiere mayor fuerza cuando en este caso no existe controversia respecto a que la Notificación de la Querella, advirtió debidamente a los peticionarios que contaban con un término de veinte días para presentar su contestación". *Íd.*, pág. 27 -28. En específico la notificación de la querella textualmente disponía que "[e]l término que usted tiene para contestar la querella o enmienda es de veinte (20) días calendarios, a partir de la notificación de la querella. De no recibirse una contestación a la querella en dicho término se le anotara la rebeldía". *Íd.*, pág. 5.

Ahora bien, también reiteró que el titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. La única excepción al requisito de no deuda será, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en

contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. Id.

Por último, reiteramos que existe una política judicial de que los casos se vean en sus méritos ya sea en los foros judiciales o en las agencias administrativas. *Neptune Packing Corp. v. Wackenhaut Corp*, 120 DPR 283, 293 (1988).

**III.**

Como cuestión preliminar, esta curia debe resolver en primer lugar la Moción de Desestimación por falta de jurisdicción presentada por el Recurrido. El Recurrido brinda una interpretación errónea del Art. 49 inciso (b) y el Art. 54 de la Ley Núm. 129-2020. De ambos artículos no se desprende que el legislador haya establecido un requisito jurisdiccional para acudir al foro apelativo.

En la Moción de desestimación se planteó que el Art. 49 inciso (B) de la Ley Núm. 129-2020 requiere que se convoque en asamblea extraordinaria a los titulares para que mediante el voto mayoritario se decida si se quiere acudir al foro apelativo o no. A nuestro entender, este artículo no dice lo que el recurrente expone. Este hace referencia a que en el caso de querer remover a un miembro de la Junta de Directores o Agente Administrador, que son a los que el estatuto hace referencia en el inciso (a), se necesitará crear la asamblea extraordinaria y en el caso de *removerlos* se necesitará el voto mayoritario. (Énfasis suplido).

Sería oneroso el crear una asamblea extraordinaria en un plazo menor de treinta (30) días, debido a que, también dentro de este plazo se tiene que presentar el Recurso de Revisión correspondiente. El Prof. Michel J. Godreau expone que:

> No hay duda de que si el condómino se enfrenta a una demanda y hay tiempo disponible, lo más conveniente es reunir al Consejo, informarle de los pormenores y obtener su autorización para proceder con todos los tramites de la contratación de abogados, de la contestación de la demanda o de una posible negociación. *En algunas circunstancias puede que no se*

*cuente con suficiente tiempo para reunir al Consejo y sea menester actuar.* En esas circunstancias la Junta o el Presidente deben actuar de acuerdo con las normas de razonabilidad y de sana administración y decidir el curso a seguir, procurando notificar al Consejo con la premura que el caso amerite. (Énfasis suplido). Michel J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: Capacidad legal de la junta de directores y del presidente para llevar acciones a nombre del condominio,* 64 Rev. Jur. UPR 841, 495 (1995).

Por consiguiente, una de las instancias en las cuales se pudiera omitir el acudir a buscar el consentimiento de los titulares por el corto tiempo que hay es cuando se piense acudir a un foro apelativo.

En lo que respecta a la notificación de los titulares, según dispone el Art. 54, dentro del plazo de treinta días (30) este se llevó a cabo, mediante una carta circular y asimismo lo reconoce el Recurrido en su escrito.

Por lo tanto, la Moción de desestimación por falta de jurisdicción no procede.

Ahora pasemos al error señalado. El Consejo realizó como único señalamiento de error que se anotó la rebeldía arbitrariamente debido a que ésta no se realizó por escrito como lo exige la LPAU.

Destacamos que el caso de autos *Freyre Martínez v. Consejo Titulares, supra,* no establece "que de no contestarse la querella dentro de 20 días a partir de su notificación, la anotación de rebeldía es compulsoria al amparo de la Regla 8.1 del Reglamento de Procedimientos Adjudicativos". (Negrillas y subrayado omitido). El TSPR justifica la anotación de Rebeldía en ese caso porque hubo una notificación por parte del DACO, según lo establece la Regla 8.1 del Reglamento del DACO, *supra.* Esta regla resalta que de no presentar la alegación responsiva dentro del término de 20 días se le podrá anotar la rebeldía. Aunque la controversia del caso de marras no gira en torno a la Regla 8.1 del Reglamento del DACO, *supra,* **resaltamos que no observamos en el expediente que se**

**haya cumplido con dicho apercibimiento.** Por lo cual, los Recurridos nos piden que tomemos conocimiento judicial de un caso que no les favorece, pues distinto al caso de *Freyre Martínez v. Consejo Titulares, supra,* en la situación de hechos que nos ocupa, no encontramos que DACO haya emitido una notificación advirtiendo que de no contestar oportunamente se le anotaría la rebeldía. Lo cual demuestra otra falta por parte del Departamento. La Notificación de Enmienda a la Querella que obra en el expediente certificado por DACO dispone, en lo pertinente lo siguiente:

> El término que usted tiene para contestar la querella y/o querella enmendada es de veinte (20) días, a partir de la notificación de la querella o presente enmienda. Oportunamente se le notificará la fecha de la vista. La contestación a la querella deberá contener su nombre completo, dirección física y postal, número de teléfono y número de querella. Podrá anejar a su contestación copia de todo documento que sirva de apoyo a su alegación sin perjuicio de producir documentos adicionales durante el procedimiento. Deberá estar firmada y fechada por usted y/o su representante legal. Si se trata de una corporación, solo podrá comparecer representada por un abogado autorizado a ejercer la profesión legal en Puerto Rico.
>
> Será obligación de las partes notificar al Departamento cualquier cambio de dirección o teléfono. El incumplimiento de esta obligación conllevará la imposición de los costos en los que el Departamento incurra para notificar dicha p[a]rte.
>
> En San Juan, Puerto Rico a 7 de octubre de 2024.

En lugar alguno advierte sobre el efecto de no contestar oportunamente contrario a los hechos del caso antes citado y la Regla 8.1 de su propio reglamento.

Por otro lado, el 7 de octubre de 2025, el Recurrido presentó una Querella en el DACO en contra del Consejo, su presidenta y la Junta de Directores. Surge de las alegaciones de la querella que Slake reclama una alegada inacción de la Junta de Directores y su presidenta, Beth Bedell, a iniciar unos trabajos de sellado de ventanas comunales de las oficinas que le pertenecen. De igual manera señala que el Consejo de Titulares aprobó una derrama y la

utilización de los fondos de reserva para dichos trabajos el 19 de mayo de 2023. Al Consejo de Titulares le reclama daños patrimoniales y emocionales por las pérdidas causadas por las filtraciones en su propiedad. Los Recurrentes no presentaron su Contestación a Querella. Por consiguiente, los Recurridos formularon una Moción para que se les anote la rebeldía. Sin embargo, los recurrentes instaron varias mociones de desestimación con el propósito de defenderse, entre ellas, una de prescripción, la cual fue adjudicada el día de la vista en su fondo.

Hemos de resaltar que luego de analizar el expediente ante nuestra consideración, nos percatamos que la primera moción de desestimación presentada por el Consejo aduciendo que la querella estaba prescrita, pues de las alegaciones de la querella surgía que Slake no imputaba violaciones del Consejo a la Ley de Condominios, la Escritura Matriz o el Reglamento, por lo cual el término para presentar la acción era de 30 días conforme el Artículo 65 de la Ley de Condominios nunca fue atendida. Sabido es que la jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir los casos y las controversias ante su consideración. *Vázquez et al., v. DACo*, 2025 TSPR 56, el primer factor que se ha de considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. *R&B Power Inc., v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024). Por traer ante la consideración del foro administrativo una alegada razón que le impediría asumir jurisdicción dicho planteamiento debió haber sido atendido como asunto de primer orden pues la ausencia de jurisdicción conlleva la nulidad de los dictámenes emitidos. Además, la notificación de una moción de desestimación por, entre otras, falta de jurisdicción sobre la materia interrumpe el término para presentar la alegación responsiva. *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1065 (2020).

En otro orden de cosas, el mecanismo procesal de la rebeldía tiene como propósito evitar la demora en los foros adjudicativos. Los Recurridos en todo momento han comparecido en el pleito y en distintas instancias procesales han presentado diferentes mociones con el propósito de que el caso siga su correspondiente trayecto. Por lo tanto, no podemos coincidir de que exista una intención de dilatar el pleito como estrategia de litigación. Al los recurridos presentar una moción con el propósito de defenderse no se les podía anotar la rebeldía, menos aun estando pendiente un planteamiento jurisdiccional. Asimismo, el Consejo compareció a la vista en su fondo señalada por el DACO con el propósito de presentar su prueba. No obstante, DACO le impuso la rebeldía, dado que no habían presentado su alegación responsiva, es decir su Contestación a Querella.

Según la Resolución emitida por el DACO la agencia "apercibió" a la Recurrente de que se le anotaría la Rebeldía en la vista celebrada el 24 de junio de 2025. No obstante, del expediente en autos entiéndase la Entrada número 16 en SUMAC ante el TPI, la cual recoge la Minuta de la vista celebrada en la fecha antes mencionada, no se desprende que se haya llevado a cabo la advertencia correspondiente, tampoco surge de la Notificación de la querella enmendada. Además, no basta con que la advertencia sea una oral, la reglamentación del Departamento exige se le aperciba en la Notificación de Querella.

La sección 3.10 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico establece que cuando se le anote la rebeldía a una parte, ésta tiene que ser por escrito, exponer los fundamentos y el recurso de revisión disponible. Del expediente en autos no observamos ningún escrito por parte del DACO que cumpla con estas características. Por lo tanto, DACO no podía

anotarle la rebeldía a la parte Recurrente en corte abierta, en ausencia de una advertencia conforme se desprende de su propia reglamentación estando pendiente un asunto jurisdiccional. El error señalado fue cometido.

## IV.

Por los fundamentos antes expuestos, se revoca la Resolución emitida por el Departamento de Asuntos del Consumidor. En su consecuencia, se deja sin efecto la anotación de rebeldía y se devuelve el caso a la agencia para la continuación de los procedimientos.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica se secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones